# EDWARDS *v.* ARIZONA

No. 79–5269. Argued November 5, 1980—Decided May 18, 1981

WHITE, J., delivered the opinion of the Court, in which BRENNAN, STEWART, MARSHALL, BLACKMUN, and STEVENS, JJ., joined. BURGER, C. J., filed an opinion concurring in the judgment, *post*, p. 487. POWELL, J., filed an opinion concurring in the result, in which REHNQUIST, J., joined, *post*, p. 488.

*Michael J. Meehan,* by appointment of the Court, 447 U. S. 903, argued the cause and filed briefs for petitioner.

*Crane McClennen,* Assistant Attorney General of Arizona, argued the cause for respondent. With him on the briefs were *Robert K. Corbin,* Attorney General, and *William J. Schafer III.*

JUSTICE WHITE delivered the opinion of the Court.

We granted certiorari in this case, 446 U. S. 950 (1980), limited to Question 1 presented in the petition, which in relevant part was "whether the Fifth, Sixth, and Fourteenth Amendments require suppression of a post-arrest confession, which was obtained after Edwards had invoked his right to consult counsel before further interrogation . . . ."

I

On January 19, 1976, a sworn complaint was filed against Edwards in Arizona state court charging him with robbery, burglary, and first-degree murder.[1] An arrest warrant was issued pursuant to the complaint, and Edwards was arrested at his home later that same day. At the police station, he was informed of his rights as required by *Miranda* v. *Arizona,* 384 U. S. 436 (1966). Petitioner stated that he understood his rights, and was willing to submit to questioning. After

---

[1] The facts stated in text are for the most part taken from the opinion of the Supreme Court of Arizona.

being told that another suspect already in custody had implicated him in the crime, Edwards denied involvement and gave a taped statement presenting an alibi defense. He then sought to "make a deal." The interrogating officer told him that he wanted a statement, but that he did not have the authority to negotiate a deal. The officer provided Edwards with the telephone number of a county attorney. Petitioner made the call, but hung up after a few moments. Edwards then said: "I want an attorney before making a deal." At that point, questioning ceased and Edwards was taken to county jail.

At 9:15 the next morning, two detectives, colleagues of the officer who had interrogated Edwards the previous night, came to the jail and asked to see Edwards. When the detention officer informed Edwards that the detectives wished to speak with him, he replied that he did not want to talk to anyone. The guard told him that "he had" to talk and then took him to meet with the detectives. The officers identified themselves, stated they wanted to talk to him, and informed him of his *Miranda* rights. Edwards was willing to talk, but he first wanted to hear the taped statement of the alleged accomplice who had implicated him.[2] After listening to the tape for several minutes, petitioner said that he would make a statement so long as it was not tape-recorded. The detectives informed him that the recording was irrelevant since they could testify in court concerning whatever he said. Edwards replied: "I'll tell you anything you want to know, but I don't want it on tape." He thereupon implicated himself in the crime.

Prior to trial, Edwards moved to suppress his confession on the ground that his *Miranda* rights had been violated when the officers returned to question him after he had invoked his right to counsel. The trial court initially granted

---

[2] It appears from the record that the detectives had brought the tape-recording with them.

the motion to suppress,[3] but reversed its ruling when presented with a supposedly controlling decision of a higher Arizona court.[4] The court stated without explanation that it found Edwards' statement to be voluntary. Edwards was tried twice and convicted.[5] Evidence concerning his confession was admitted at both trials.

On appeal, the Arizona Supreme Court held that Edwards had invoked both his right to remain silent and his right to counsel during the interrogation conducted on the night of January 19.[6] 122 Ariz. 206, 594 P. 2d 72. The court then went on to determine, however, that Edwards had waived both rights during the January 20 meeting when he voluntarily gave his statement to the detectives after again being informed that he need not answer questions and that he need not answer without the advice of counsel: "The trial court's finding that the waiver and confession were voluntarily and knowingly made is upheld." *Id.*, at 212, 594 P. 2d, at 78.

Because the use of Edward's confession against him at his trial violated his rights under the Fifth and Fourteenth Amendments as construed in *Miranda* v. *Arizona, supra,* we reverse the judgment of the Arizona Supreme Court.[7]

---

[3] The trial judge emphasized that the detectives had met with Edwards on January 20, without being requested by Edwards to do so, and concluded that they had ignored his request for counsel made the previous evening. App. 91–93.

[4] The case was *State* v. *Travis,* 26 Ariz. App. 24, 545 P. 2d 986 (1976).

[5] The jury in the first trial was unable to reach a verdict.

[6] This issue was disputed by the State. The court, while finding that the question was arguable, held that Edwards' request for an attorney to assist him in negotiating a deal was "sufficiently clear" within the context of the interrogation that it "must be interpreted as a request for counsel and as a request to remain silent until counsel was present." 122 Ariz., at 211, 594 P. 2d, at 77.

[7] We thus need not decide Edwards' claim that the State deprived him of his right to counsel under the Sixth and Fourteenth Amendments as construed and applied in *Massiah* v. *United States,* 377 U. S. 201 (1964). In that case, the Court held that the Sixth Amendment right to counsel arises whenever an accused has been indicted or adversary criminal proceedings

## II

In *Miranda* v. *Arizona,* the Court determined that the Fifth and Fourteenth Amendments' prohibition against compelled self-incrimination required that custodial interrogation be

---

have otherwise begun and that this right is violated when admissions are subsequently elicited from the accused in the absence of counsel. While initially conceding in its opening brief on the merits that Edwards' right to counsel under *Massiah* attached immediately after he was formally charged, the State in its supplemental brief and during oral argument took the position that under *Kirby* v. *Illinois,* 406 U. S. 682, 689–690 (1972), and *Moore* v. *Illinois,* 434 U. S. 220, 226–227 (1977), the filing of the formal complaint did not constitute the "adversary judicial criminal proceedings" necessary to trigger the Sixth Amendment right to counsel. Under the State Constitution, "[n]o person shall be prosecuted criminally in any court of record for felony or misdemeanor, otherwise than by information or indictment; no person shall be prosecuted for felony by information without having had a preliminary examination before a magistrate or having waived such preliminary examination." Ariz. Const., Art. 2, § 30. The State contends that the Sixth Amendment right to counsel does not attach until either the constitutionally required indictment or information is filed or at least no earlier than the preliminary hearing to which a defendant is entitled if the matter proceeds by complaint. Under Arizona law, a felony prosecution may be commenced by way of a complaint, Ariz. Rule of Criminal Procedure 2.2. The complaint is a "written statement of the essential facts constituting a public offense, made upon oath before a magistrate," Rule 2.3, upon which the magistrate either issues an arrest warrant or dismisses the complaint. Rule 2.4. Once arrested, the accused must be taken before the magistrate for a hearing. Rule 4.1. At that hearing, the magistrate ascertains the accused's true name and address, and informs him of the charges against him, his right to counsel, his right to remain silent, and his right to a preliminary hearing if charged via complaint. Rule 4.2. Unless waived, the preliminary hearing must take place no later than 10 days after the defendant is placed in custody. Rule 5.1. The purpose of the hearing is to determine whether probable cause exists to hold the defendant for trial. Rule 5.3. Against this background and in support of its position, the State relies on *Moore* v. *Illinois, supra,* where after recognizing that under Illinois law "[t]he prosecution in this case was commenced . . . when the victim's complaint was filed in court," we noted that "adversary judicial criminal proceedings" were initiated when the ensuing preliminary hearing occurred. *Moore, supra,* at 228. Cf. *United States* v. *Duvall,* 537 F. 2d 15, 20–22 (CA2) (the filing of

preceded by advice to the putative defendant that he has the right to remain silent and also the right to the presence of an attorney. 384 U. S., at 479. The Court also indicated the procedures to be followed subsequent to the warnings. If the accused indicates that he wishes to remain silent, "the interrogation must cease." If he requests counsel, "the interrogation must cease until an attorney is present." *Id.,* at 474.

*Miranda* thus declared that an accused has a Fifth and Fourteenth Amendment right to have counsel present during custodial interrogation. Here, the critical facts as found by the Arizona Supreme Court are that Edwards asserted his right to counsel and his right to remain silent on January 19, but that the police, without furnishing him counsel, returned the next morning to confront him and as a result of the meeting secured incriminating oral admissions. Contrary to the holdings of the state courts, Edwards insists that having exercised his right on the 19th to have counsel present during interrogation, he did not validly waive that right on the 20th. For the following reasons, we agree.

First, the Arizona Supreme Court applied an erroneous standard for determining waiver where the accused has specifically invoked his right to counsel. It is reasonably clear under our cases that waivers of counsel must not only be voluntary, but must also constitute a knowing and intelligent relinquishment or abandonment of a known right or privilege, a matter which depends in each case "upon the particular facts and circumstances surrounding that case, including the background, experience, and conduct of the accused." *Johnson* v. *Zerbst,* 304 U. S. 458, 464 (1938). See *Faretta* v. *California,* 422 U. S. 806, 835 (1975); *North Carolina* v. *Butler,* 441 U. S. 369, 374–375 (1979); *Brewer* v. *Williams,* 430 U. S.

---

a complaint and the issuance of an arrest warrant does not trigger the right to counsel under the Sixth Amendment, that right accruing only upon further proceedings), cert. denied, 426 U. S. 950 (1976). The Arizona Supreme Court did not address the Sixth Amendment question, nor do we.

387, 404 (1977); *Fare* v. *Michael C.*, 442 U. S. 707, 724–725 (1979).

Considering the proceedings in the state courts in the light of this standard, we note that in denying petitioner's motion to suppress, the trial court found the admission to have been "voluntary," App. 3, 95, without separately focusing on whether Edwards had knowingly and intelligently relinquished his right to counsel. The Arizona Supreme Court, in a section of its opinion entitled "Voluntariness of Waiver," stated that in Arizona, confessions are prima facie involuntary and that the State had the burden of showing by a preponderance of the evidence that the confession was freely and voluntarily made. The court stated that the issue of voluntariness should be determined based on the totality of the circumstances as it related to whether an accused's action was "knowing and intelligent and whether his will [was] overborne." 122 Ariz., at 212, 594 P. 2d, at 78. Once the trial court determines that "the confession is voluntary, the finding will not be upset on appeal absent clear and manifest error." *Ibid.* The court then upheld the trial court's finding that the "waiver and confession were voluntarily and knowingly made." *Ibid.*

In referring to the necessity to find Edwards' confession knowing and intelligent, the State Supreme Court cited *Schneckloth* v. *Bustamonte*, 412 U. S. 218, 226 (1973). Yet, it is clear that *Schneckloth* does not control the issue presented in this case. The issue in *Schneckloth* was under what conditions an individual could be found to have consented to a search and thereby waived his Fourth Amendment rights. The Court declined to impose the "intentional relinquishment or abandonment of a known right or privilege" standard and required only that the consent be voluntary under the totality of the circumstances. The Court specifically noted that the right to counsel was a prime example of those rights requiring the special protection of the knowing and intelligent waiver standard, *id.*, at 241, but held that "[t]he considera-

tions that informed the Court's holding in *Miranda* are simply inapplicable in the present case." *Id.,* at 246. *Schneckloth* itself thus emphasized that the voluntariness of a consent or an admission on the one hand, and a knowing and intelligent waiver on the other, are discrete inquiries. Here, however sound the conclusion of the state courts as to the voluntariness of Edwards' admission may be, neither the trial court nor the Arizona Supreme Court undertook to focus on whether Edwards understood his right to counsel and intelligently and knowingly relinquished it. It is thus apparent that the decision below misunderstood the requirement for finding a valid waiver of the right to counsel, once invoked.

Second, although we have held that after initially being advised of his *Miranda* rights, the accused may himself validly waive his rights and respond to interrogation, see *North Carolina* v. *Butler, supra,* at 372–376, the Court has strongly indicated that additional safeguards are necessary when the accused asks for counsel; and we now hold that when an accused has invoked his right to have counsel present during custodial interrogation, a valid waiver of that right cannot be established by showing only that he responded to further police-initiated custodial interrogation even if he has been advised of his rights.[8] We further hold that an accused, such as Edwards, having expressed his desire to deal with the police only through counsel, is not subject to further interrogation by the authorities until counsel has been made avail-

---

[8] In *Brewer* v. *Williams,* 430 U. S. 387 (1977), where, as in *Massiah* v. *United States,* 377 U. S. 201 (1964), the Sixth Amendment right to counsel had accrued, the Court held that a valid waiver of counsel rights should not be inferred from the mere response by the accused to overt or more subtle forms of interrogation or other efforts to elicit incriminating information. In *Massiah* and *Brewer,* counsel had been engaged or appointed and the admissions in question were elicited in his absence. But in *McLeod* v. *Ohio,* 381 U. S. 356 (1965), we summarily reversed a decision that the police could elicit information after indictment even though counsel had not yet been appointed.

able to him, unless the accused himself initiates further communication, exchanges, or conversations with the police.

*Miranda* itself indicated that the assertion of the right to counsel was a significant event and that once exercised by the accused, "the interrogation must cease until an attorney is present." 384 U. S., at 474. Our later cases have not abandoned that view. In *Michigan* v. *Mosley,* 423 U. S. 96 (1975), the Court noted that *Miranda* had distinguished between the procedural safeguards triggered by a request to remain silent and a request for an attorney and had required that interrogation cease until an attorney was present only if the individual stated that he wanted counsel. 423 U. S., at 104, n. 10; see also *id.,* at 109–111 (WHITE, J., concurring). In *Fare* v. *Michael C., supra,* at 719, the Court referred to *Miranda's* "rigid rule that an accused's request for an attorney is *per se* an invocation of his Fifth Amendment rights, requiring that all interrogation cease." And just last Term, in a case where a suspect in custody had invoked his *Miranda* right to counsel, the Court again referred to the "undisputed right" under *Miranda* to remain silent and to be free of interrogation "until he had consulted with a lawyer." *Rhode Island* v. *Innis,* 446 U. S. 291, 298 (1980). We reconfirm these views and, to lend them substance, emphasize that it is inconsistent with *Miranda* and its progeny for the authorities, at their instance, to reinterrogate an accused in custody if he has clearly asserted his right to counsel.

In concluding that the fruits of the interrogation initiated by the police on January 20 could not be used against Edwards, we do not hold or imply that Edwards was powerless to countermand his election or that the authorities could in no event use any incriminating statements made by Edwards prior to his having access to counsel. Had Edwards initiated the meeting on January 20, nothing in the Fifth and Fourteenth Amendments would prohibit the police from merely listening to his voluntary, volunteered statements and using them against him at the trial. The Fifth Amendment right

identified in *Miranda* is the right to have counsel present at any custodial interrogation. Absent such interrogation, there would have been no infringement of the right that Edwards invoked and there would be no occasion to determine whether there had been a valid waiver. *Rhode Island* v. *Innis, supra,* makes this sufficiently clear. 446 U. S., at 298, n. 2.[9]

But this is not what the facts of this case show. Here, the officers conducting the interrogation on the evening of Jan-

---

[9] If, as frequently would occur in the course of a meeting initiated by the accused, the conversation is not wholly one-sided, it is likely that the officers will say or do something that clearly would be "interrogation." In that event, the question would be whether a valid waiver of the right to counsel and the right to silence had occurred, that is, whether the purported waiver was knowing and intelligent and found to be so under the totality of the circumstances, including the necessary fact that the accused, not the police, reopened the dialogue with the authorities.

Various decisions of the Courts of Appeals are to the effect that a valid waiver of an accused's previously invoked Fifth Amendment right to counsel is possible. See, *e. g., White* v. *Finkbeiner,* 611 F. 2d 186, 191 (CA7 1979) ("in certain instances, for various reasons, a person in custody who has previously requested counsel may knowingly and voluntarily decide that he no longer wishes to be represented by counsel"), cert. pending, No. 79–6601; *Kennedy* v. *Fairman,* 618 F. 2d 1242 (CA7 1980); *United States* v. *Rodriguez-Gastelum,* 569 F. 2d 482, 486 (CA9) (en banc) (stating that it makes no sense to hold that once an accused has requested counsel, "[he] may never, until he has actually talked with counsel, change his mind and decide to speak with the police without an attorney being present"), cert. denied, 436 U. S. 919 (1978). See generally *Cobbs* v. *Robinson,* 528 F. 2d 1331, 1342 (CA2 1975); *United States* v. *Grant,* 549 F. 2d 942 (CA4 1977), vacated on other grounds *sub nom. Whitehead* v. *United States,* 435 U. S. 912 (1978); *United States* v. *Hart,* 619 F. 2d 325 (CA4 1980); *United States* v. *Hauck,* 586 F. 2d 1296 (CA8 1978). The rule in the Fifth Circuit is that a knowing and intelligent waiver cannot be found once the Fifth Amendment right to counsel has been clearly invoked unless the accused initiates the renewed contact. See, *e. g., United States* v. *Massey,* 550 F. 2d 300 (1977); *United States* v. *Priest,* 409 F. 2d 491 (1969). Waiver is possible, however, when the request for counsel is equivocal. *Nash* v. *Estelle,* 597 F. 2d 513 (CA5 1979) (en banc). See *Thompson* v. *Wainwright,* 601 F. 2d 768 (CA5 1979).

uary 19 ceased interrogation when Edwards requested counsel as he had been advised he had the right to do. The Arizona Supreme Court was of the opinion that this was a sufficient invocation of his *Miranda* rights, and we are in accord. It is also clear that without making counsel available to Edwards, the police returned to him the next day. This was not at his suggestion or request. Indeed, Edwards informed the detention officer that he did not want to talk to anyone. At the meeting, the detectives told Edwards that they wanted to talk to him and again advised him of his *Miranda* rights. Edwards stated that he would talk, but what prompted this action does not appear. He listened at his own request to part of the taped statement made by one of his alleged accomplices and then made an incriminating statement, which was used against him at his trial. We think it is clear that Edwards was subjected to custodial interrogation on January 20 within the meaning of *Rhode Island* v. *Innis, supra,* and that this occurred at the instance of the authorities. His statement, made without having had access to counsel, did not amount to a valid waiver and hence was inadmissible.[10]

Accordingly, the holding of the Arizona Supreme Court that Edwards had waived his right to counsel was infirm, and the judgment of that court is reversed.

*So ordered.*

CHIEF JUSTICE BURGER, concurring in the judgment.

I concur only in the judgment because I do not agree that either any constitutional standard or the holding of *Miranda* v. *Arizona,* 384 U. S. 436 (1966)—as distinguished from its dicta—calls for a special rule as to how an accused in custody may waive the right to be free from interrogation. The extraordinary protections afforded a person in custody suspected of criminal conduct are not without a valid basis, but

---

[10] We need not decide whether there would have been a valid waiver of counsel had the events of January 20 been the first and only interrogation to which Edwards had been subjected. Cf. *North Carolina* v. *Butler,* 441 U. S. 369 (1979).

as with all "good" things they can be carried too far. The notion that any "prompting" of a person in custody is somehow evil *per se* has been rejected. *Rhode Island* v. *Innis*, 446 U. S. 291 (1980). For me, the inquiry in this setting is whether resumption of interrogation is a result of a voluntary waiver, and that inquiry should be resolved under the traditional standards established in *Johnson* v. *Zerbst*, 304 U. S. 458, 464 (1938):

> "A waiver is ordinarily an intentional relinquishment or abandonment of a known right or privilege. The determination of whether there has been an intelligent waiver . . . must depend, in each case, upon the particular facts and circumstances surrounding that case, including the background, experience, and conduct of the accused."

Accord, *e. g., Fare* v. *Michael C.*, 442 U. S. 707 (1979); *North Carolina* v. *Butler*, 441 U. S. 369 (1979). In this case, the Supreme Court of Arizona described the situation as follows:

> "When the detention officer told Edwards that the detectives were there to see him, he told the officer that he did not wish to speak to anyone. The officer told him *that he had to.*" 122 Ariz. 206, 209, 594 P. 2d 72, 75 (1979) (emphasis added).

This is enough for me, and on this record the Supreme Court of Arizona erred in holding that the resumption of interrogation was the product of a voluntary waiver, such as I found to be the situation in both *Innis, supra,* at 304 (concurring opinion), and *Brewer* v. *Williams*, 430 U. S. 387, 417–418 (1977) (dissenting opinion).

JUSTICE POWELL, with whom JUSTICE REHNQUIST joins, concurring in the result.

Although I agree that the judgment of the Arizona Supreme Court must be reversed, I do not join the Court's opinion because I am not sure what it means.

I can agree with much of the opinion. It states the settled rule:

"It is reasonably clear under our cases that waivers of counsel must not only be voluntary, but must also constitute a knowing and intelligent relinquishment or abandonment of a known right or privilege, a matter which depends in each case 'upon the particular facts and circumstances surrounding that case, including the background, experience and conduct of the accused.' *Johnson* v. *Zerbst,* 304 U. S. 458, 464 (1938). See *Faretta* v. *California,* 422 U. S. 806, 835 (1975); *North Carolina* v. *Butler,* 441 U. S. 369, 374–375 (1979); *Brewer* v. *Williams,* 430 U. S. 387, 404 (1977); *Fare* v. *Michael C.,* 442 U. S. 707, 724–725 (1979)." *Ante,* at 482–483.

I have thought it settled law, as these cases tell us, that one accused of crime may waive *any* of the constitutional safeguards—including the right to remain silent, to jury trial, to call witnesses, to cross-examine one's accusers, to testify in one's own behalf, and—of course—to have counsel. Whatever the right, the standard for waiver is whether the actor fully understands the right in question and voluntarily intends to relinquish it.

In its opinion today, however, the Court—after reiterating the familiar principles of waiver—goes on to say:

"We further hold that an accused, such as Edwards, having expressed his desire to deal with the police only through counsel, is not subject to further interrogation by the authorities until counsel has been made available to him, *unless the accused [has] himself initiate[d] further communication, exchanges, or conversations with the police.*" *Ante,* at 484–485 (emphasis added).

In view of the emphasis placed on "initiation," see also *ante,* at 485–486, and n. 9, I find the Court's opinion unclear. If read to create a new *per se* rule, requiring a threshold inquiry

as to precisely who opened any conversation between an accused and state officials, I cannot agree. I would not superimpose a new element of proof on the established doctrine of waiver of counsel.

Perhaps the Court's opinion can be read as not departing from established doctrine. Accepting the formulation quoted above, two questions are identifiable: (i) was there in fact "interrogation," see *Rhode Island* v. *Innis,* 446 U. S. 291 (1980), and (ii) did the police "initiate" it? Each of these questions is, of course, relevant to the admissibility of a confession. In this case, for example, it is clear that Edwards was taken from his cell against his will and subjected to renewed interrogation. Whether this is described as police-"initiated" interrogation or in some other way, it clearly was questioning under circumstances incompatible with a voluntary waiver of the fundamental right to counsel.

But few cases will be as clear as this one. Communications between police and a suspect in custody are commonplace. It is useful to contrast the circumstances of this case with typical, and permissible, custodial communications between police and a suspect who has asked for counsel. For example, police do not impermissibly "initiate" renewed interrogation by engaging in routine conversations with suspects about unrelated matters. And police legitimately may inquire whether a suspect has changed his mind about speaking to them without an attorney. *E. g., State* v. *Turner,* 32 Ore. App. 61, 65, 573 P. 2d 326, 327 (1978); see *State* v. *Crisler,* 285 N. W. 2d 679, 682 (Minn. 1979); *State* v. *Marcum,* 24 Wash. App. 441, 445–446, 601 P. 2d 975, 978 (1979). It is not unusual for a person in custody who previously has expressed an unwillingness to talk or a desire to have a lawyer, to change his mind and even welcome an opportunity to talk. Nothing in the Constitution erects obstacles that preclude police from ascertaining whether a suspect has reconsidered his original decision. As JUSTICE WHITE has observed, this Court consistently has "rejected any paternalistic

rule protecting a defendant from his intelligent and voluntary decisions about his own criminal case." *Michigan* v. *Mosley*, 423 U. S. 96, 109 (1975) (WHITE, J., concurring in result).[1]

In sum, once warnings have been given and the right to counsel has been invoked, the relevant inquiry—whether the suspect now desires to talk to police without counsel—is a question of fact to be determined in light of all of the circumstances. Who "initiated" a conversation may be relevant to the question of waiver, but it is not the *sine qua non* to the inquiry. The ultimate question is whether there was a free and knowing waiver of counsel before interrogation commenced.

If the Court's opinion does nothing more than restate these principles, I am in agreement with it. I hesitate to join the opinion only because of what appears to be an undue, and undefined, emphasis on a single element: "initiation." As JUSTICE WHITE has noted, the Court in *Miranda* v. *Ari-*

---

[1] JUSTICE WHITE noted in *Michigan* v. *Mosley*:

"Although a recently arrested individual may have indicated an initial desire not to answer questions, he would nonetheless want to know immediately—if it were true—that his ability to explain a particular incriminating fact or to supply an alibi for a particular time period would result in his immediate release. Similarly, he might wish to know—if it were true—that (1) the case against him was unusually strong and that (2) his immediate cooperation with the authorities in the apprehension and conviction of others or in the recovery of property would redound to his benefit in the form of a reduced charge." 423 U. S., at 109, n. 1.

In *Michigan* v. *Mosley*, of course, the question was whether a suspect who had invoked his right to *remain silent* later could change his mind and speak to police. The facts of *Mosley* differ somewhat from the present case because here petitioner had *requested counsel*. It is nevertheless true in both cases that "a blanket prohibition against the taking of voluntary statements or a permanent immunity from further interrogation, regardless of the circumstances, would transform the *Miranda* safeguards into wholly irrational obstacles to legitimate police investigative activity, and deprive suspects of an opportunity to make informed and intelligent assessments of their interests." *Id.*, at 102 (opinion of STEWART, J.).

*zona,* 384 U. S. 436 (1965), imposed a general prophylactic rule that is not manifestly required by anything in the text of the Constitution. *Id.,* at 526 (WHITE, J., dissenting); see *Michigan* v. *Tucker,* 417 U. S. 433, 443–444 (1974). *Miranda* itself recognized, moreover, that counsel's assistance can be waived. 384 U. S., at 475 (opinion of Warren, C. J.). Waiver always has been evaluated under the general formulation of the *Zerbst* standard quoted above. My concern is that the Court's opinion today may be read as "constitutionalizing" not the generalized *Zerbst* standard but a *single element of fact* among the various facts that may be relevant to determining whether there has been a valid waiver.[2]

---

[2] Such a step should be taken only if it is demonstrably clear that the traditional waiver standard is ineffective. There is no indication, in the multitude of cases that come to us each Term, that *Zerbst* and its progeny have failed to protect constitutional rights.