Argued and submitted January 15, affirmed March 22, 1982

# STATE OF OREGON,
*Respondent,*

*v.*

# DAVID ALAN DISTLER,
*Appellant.*

## (No. T 80-9-0561, CA A21379)

642 P2d 327

Charles J. Wiseman, Portland, argued the cause and filed the brief for appellant.

Virginia L. Linder, Assistant Attorney General, Salem, argued the cause for respondent. With her on the brief were Dave Frohnmayer, Attorney General, and William F. Gary, Solicitor General, Salem.

Before Gillette, Presiding Judge, Young, Judge, and Roberts, Judge Pro Tempore.

GILLETTE, P. J.

## GILLETTE, P. J.

Defendant appeals his conviction for driving under the influence of intoxicants. He argues that the trial court erroneously admitted certain statements he made after requesting an attorney. We affirm.

Defendant was stopped at approximately 1 a.m. by Oregon State Police Officers Adamse and Stowall after they had observed his erratic driving. The officers made an audio tape recording of their investigation. The evidence of Adamse's initial investigatory questioning, which was not challenged as inadmissible by defendant, established that defendant told the officer that he had been drinking "Black Velvet," that he had had eleven drinks, that he was driving from a tavern and going home and that he was not taking any medication or prescription drugs. After attempting to perform certain field sobriety tests, one of which defendant said he could not do because he "probably had too much to drink," defendant was arrested for driving under the influence of intoxicants.

After the arrest, Adamse advised defendant of his rights as follows:

"ADAMSE: You have the right to remain silent and anything you say can and will be used against you in (interruption) * * *

"DEFENDANT: Want my lawyer. I want my lawyer.

"ADAMSE [continuing]: * * * you have a right to talk with a lawyer and have him present with you while you are being questioned. If you cannot afford to hire a lawyer, one will be appointed to represent you before being questioned, if you wish at the public's expense. If you do give a statement you can stop talking anytime you wish. Do you understand these rights, Mr. Distler?

"DEFENDANT: Yes I do.

"ADAMSE: Having these rights in mind do you wish to talk with us now?

"(Pause)

"DEFENDANT: May I ask one question?"

Defendant then asked the police to have him laid off sick from work and began talking about how a friend and he had gone out drinking the night before. He said he wanted his lights turned off and his car locked, talked further about wanting to be laid off sick, having his parents know

he had been arrested and wanting to take a test. The tape recording shows that after defendant's car was locked, he was placed in the back of the patrol car and told the officers to keep his wallet.

Stowall then joined defendant in the back seat and initiated the following conversation:

"STOWALL: Alright, Sir, we've got your keys, we've got your wallet and your car is locked. I have some questions, I'd like to ask you on the alcohol interview report. I want to once again advise you of your rights * * *

"DEFENDANT: I realize my rights, I would like to have my attorney.

"STOWALL: You don't wish to answer any questions then?

"DEFENDANT: I can't get into any more trouble than I am. Okay, ask 'em."

Defendant then told Stowall that he had been drinking at the New Harmony Inn Tavern from about 3 p.m. to about 12:15 a.m. and that he drank approximately 11 drinks consisting of Black Velvet and water. At trial, the entire tape made by the police officers, beginning at the time they stopped defendant's car, was admitted into evidence over defendant's objection to the segment of the tape containing statements defendant made after requesting an attorney.

There was also testimony from Office Adamse as to the circumstances of the stop and the ensuing arrest. Adamse testified that she and Stowall observed defendant's vehicle weaving from the curbside into the opposite lane of traffic several times as it approached a traffic light where the patrol car was stopped. The officers followed the car, which continued to weave, and observed defendant make a right hand turn without signaling and cross into the opposite lane of traffic during the turn. Shortly thereafter, Adamse turned on the patrol car's overhead lights and stopped defendant's vehicle. She then walked up to the vehicle and explained that the officers had stopped him because his vehicle was weaving.

Adamse testified that defendant had an overwhelming odor of alcohol about him, his eyes were very watery and bloodshot, the pupils of his eyes were dilated and his face was red and flushed. After defendant got out of

his automobile, he had difficulty keeping his balance and swayed as he stood. He could manage a normal walk without great difficulty, although his balance was uncertain. When he attempted a heel-to-toe field sobriety test, he fell. He performed a finger counting test slowly, but accurately. He was unable to do a finger-to-nose test as demonstrated by the officer, and he swayed when he stood still to try the test.

Once at the station, defendant was asked to take a breathalyzer test. The test showed him to have a blood alcohol content of. 22 percent by weight.

Defendant's sole assignment of error on appeal is that the trial court erred in admitting into evidence that portion of the tape that contained questions and answers from the custodial interview of the defendant by Officer Stowall after the defendant had requested an attorney, relying on *Edwards v. Arizona*, ___ US ___, 101 S Ct 1880, 68 L Ed 2d 378 (1981). Assuming without deciding that defendant's assignment of error is well taken, we nonetheless affirm his conviction. The other evidence in the case, none of which is challenged by defendant, establishes his guilt so thoroughly that we can say that the alleged error is harmless beyond a reasonable doubt. *Chapman v. California*, 386 US 18, 87 S Ct 824, 17 L Ed 2d 705 (1967).

Affirmed.