STATE OF WEST VIRGINIA

*v.*

RONALD PAUL SPROUSE

(No. 15036)

Decided March 26, 1982.

*James M. Powell* for appellant.

*Chauncey H. Browning,* Attorney General, and *Ronald A. Shipley,* Assistant Attorney General, for appellee.

---

PER CURIAM:

Appellant, Ronald Paul Sprouse, appeals from the judgment of the Circuit Court of Ritchie County finding him guilty of first degree murder with a recommendation of mercy.

Sometime in April, 1976, the body of Dessie Monroe, an elderly woman who lived alone, was found dead from a savage beating in her house. The subsequent police investigation revealed that the appellant might know something about the murder. On the evening of 25 April 1977 the police sent for the appellant who was then an inmate in the Huttonsville Correctional Center. A Deputy Sheriff of Tyler County picked up the appellant and brought him to the Sheriff's Office in Middlebourne at about 9 p.m. that evening. State Police officers then rotated in two man teams, alternately chatting with and then interrogating the appellant. After several requests, the appellant consented to take a polygraph test during the course of the night. The results of the test showed that the appellant was either lying or withholding information. The interrogation concluded at approximately 2:30 a.m. on 26 April 1977.

After spending the rest of the night in the Tyler County Jail, the appellant was transferred to the Harrisville State Police Barracks in Ritchie County. Again he was confronted by teams of interrogators. This interrogation began at approximately 7 p.m. and concluded at 12:20 a.m., at which point the appellant made a statement putting him at the scene of the crime with two friends. In the statement the appellant described how he and the other two had planned to steal some antiques from the victim's house in order to get some quick money. The appellant further stated that, once in the victim's house, one of his friends knocked her down and beat her with a broom and then a skillet.

At a three day suppression hearing the appellant contended that he had repeatedly asked for an attorney. The appellant further asserted that during the course of

the interrogation he was not permitted to take medication for his epileptic condition and that the interrogating officers threatened to harass his father and his wife unless he signed a statement implicating himself in the murder. The State introduced evidence that he had signed several waivers and had been warned of his rights on several occasions.

The appellant has assigned as error the trial court's decision to admit his statement into evidence.[1] We agree and reverse.

We have recently dealt with this question in *State v. Persinger*, ___ W.Va. ___, 286 S.E.2d 261 (1982), in which the defendant had been interrogated by the police for three hours in the middle of the night before making an inculpatory statement. In reversing the conviction in that case we focused primarily on the fact that the defendant had requested counsel during the course of the interrogation. However, we were not unmindful of the draining nature of the interrogation lasting into the midnight hours.

Similarly in this case the police chose to do their interrogations only at night and for long periods of time. Though he initially refused to take the lie detector test, the police immediately asked him to reconsider. From the beginning the police were on notice that the appellant was subject to epileptic fits and needed medication. While discussing the appellant's background during the course of the interrogation, the police learned that he had been discharged from the Navy for having claustrophobia. Nonetheless, the police continued questioning the appellant in a small room for extended periods of time. In light of these circumstances concerning both the mental and the physical problems of the appellant as well as the location and length of the interrogation, we find that the appellant's statement was coerced and involuntary. *See*

---

[1] The appellant also assigned as error the introduction of certain photographs of the victim, the instruction concerning criminal intent, and the prosecutor's closing argument. Upon review of the record we find that these claims are frivolous and, hence, were not fairly raised.

Edwards v. Arizona, 451 U.S. 477, 101 S. Ct. 1880, 68 L.Ed.2d 378 (1981).

Accordingly for the reasons stated above the judgment of the Circuit Court of Ritchie County is reversed.

*Reversed.*