**Ulysses J. LEWIS, Appellant,**

v.

**STATE of Alaska, Appellee.**

No. A-2265.

Court of Appeals of Alaska.

Sept. 22, 1989.

Linda K. Wilson, Asst. Public Defender, and John B. Salemi, Public Defender, Anchorage, for appellant.

Cynthia M. Hora, Asst. Atty. Gen., Office of Sp. Prosecutions and Appeals, Anchorage, and Douglas B. Baily, Atty. Gen., Juneau, for appellee.

Before BRYNER, C.J., and COATS and SINGLETON, JJ.

OPINION

COATS, Judge.

Ulysses J. Lewis was convicted by a jury of two counts of misconduct involving controlled substances in the third degree (delivery of cocaine). AS 11.71.030(a)(1). Lewis appeals, and we reverse.

In September 1986, Lewis became a suspect in cocaine transactions allegedly occurring at the Best Western Barratt Inn in Anchorage. With the cooperation of the hotel management, the Metropolitan Drug Enforcement Unit (Metro) placed a confidential informant, Robert Christensen, in employment at the hotel. Christensen allegedly bought cocaine from Lewis twice. Both buys took place in two parts. First, Christensen met with Lewis at the Barratt Inn to give Lewis the money. Then, the next day, Christensen would go to Lewis' residence and pick up the cocaine.

The Metro officers kept Christensen under surveillance as closely as they could; however, there were times when Christensen was not under surveillance. Although Christensen wore a microphone and a transmitting device, this unit malfunctioned each time Christensen met with Lewis.

this case are not being reversed, however, his probation revocation must stand.

On January 9, 1987, Lewis was arrested at the Barratt Inn by Sergeant Michael Corkill. Corkill interviewed Lewis at the Barratt Inn. This interview was tape-recorded. During the interview, Lewis was advised of his *Miranda* rights. Lewis initially waived his rights, but later in the interview requested an attorney. Corkill continued with his questioning; he neither attempted to obtain an attorney for Lewis nor stopped the interview. Lewis subsequently made incriminating statements.

Lewis moved to suppress his statement. Superior Court Judge Victor D. Carlson granted the motion but suppressed only a small portion of the statement immediately following Lewis' request.

During the trial, the state only introduced that portion of the statement preceding Lewis' request for counsel. However, Corkill referred to other portions of the statement during direct examination:

Q   Did you ask him about giving coca—whether the defendant gave cocaine to Christensen?

A   Initially he had stated, no; then he said maybe once; then he said maybe a couple of times; and then he varied as far as the amounts went.

Q   Did he tell you he didn't do it at the Best Western Inn?

A   Yes, he did.

During the cross-examination, Corkill volunteered the following unsolicited response:

Q   ... Did you ask him: Did you get money from Christensen? Did you ask him that question?

A   Yes, I did.

Q   And he says, no.

A   He said, no. Then he said, he's given money to other people. *He said initially, no, I did not give any cocaine. Then he said, well, I might have, a half gram or something. This is all in the same statement you're referring to, I believe.*

After this remark defense counsel tried to clarify the witness' testimony:

Q   You're saying that Mr. Chri—that in this statement the portion that was read, that he said that he gave cocaine to Christensen?

A   Yes, I am.

Q   Look at the first four and a half pages. Find that for me. I can't see it.

A   On page 5.

Q   Okay. Wait a minute.

Mr. Howard: If I might approach the witness?

Court: Yes.

A   Excuse me, not on page 5.

Q   Where on page 5?

A   On page 7.

Lewis moved for a mistrial, arguing that the witness was testifying to matters suppressed. The state argued that the witness was referring to page five which was already in evidence and, in the alternative, that page seven had not been suppressed, so the testimony was proper.

■ On appeal, the state concedes that Judge Carlson erred in suppressing only part of the statements which Lewis made following his request for counsel. The state concedes that Judge Carlson should have suppressed all of the statements which Lewis made following his request for counsel. The state's confession of error is well-founded. *Marks v. State,* 496 P.2d 66 (Alaska 1972) (appellate court must make an independent determination that state's confession of error is well-founded). *See also Edwards v. Arizona,* 451 U.S. 477, 484–85, 101 S.Ct. 1880, 1884–85, 68 L.Ed.2d 378 (1981) (once a suspect invokes his right to counsel, the police must cease questioning; waiver cannot be established from a suspect's continued response to questions).

The state argues that Judge Carlson found that Corkill did not refer to a part of the statement which should have been suppressed, and that Corkill's testimony can reasonably be construed as only referring to parts of the statement which were ad-

missible. We disagree with the state. Corkill's testimony that he was referring to page seven of Lewis' statement, which is a part of the statement which Lewis made following his invocation of his right to counsel, supports this conclusion. Further, our review of the record leads us to the conclusion that the critical part of Corkill's testimony refers to pages six and seven of Lewis' statement, portions which should have been suppressed, rather than page five. We conclude that Corkill's testimony refers to portions of Lewis' statement which the state concedes should have been suppressed.

■ The state also contends that we should find that Corkill's reference to the inadmissible portions of Lewis' statement was harmless error. The erroneous admission into evidence of Lewis' statement to the police following his invocation of his right to an attorney is a violation of Lewis' constitutional right to remain silent and his right to have the assistance of an attorney under the United States and Alaska constitutions. To find harmless error we must find that the error was harmless beyond a reasonable doubt. *Chapman v. California*, 386 U.S. 18, 24, 87 S.Ct. 824, 828, 17 L.Ed.2d 705 (1967).

The inadmissible statements which Corkill related were admissions by Lewis that he "might have" given cocaine to the undercover informant. This admission could well have been given considerable weight by the jury.

The state contends that the evidence against Lewis was overwhelming: Christensen was strip searched before and after he picked up cocaine at Lewis' residence. Christensen's car was also searched before and after the deliveries. Metro officers conducted surveillance of two of the meetings between Christensen and Lewis. There was a recorded telephone conversation between Christensen and Lewis during which Lewis told Christensen that he had what Christensen wanted and that he should come alone and pick it up.

Although the state's case was strong, this is not a case where the drug transaction was recorded or the police were able to observe the actual drug transaction. Because both Christensen and Lewis worked at the Barratt Inn, little weight can be given to their meeting in the hotel. The police lost sight of Christensen when he first entered the hotel, only regaining surveillance after Christensen met Lewis. Although the police were able to watch Christensen and Lewis while they met, the police were unable to testify that they had seen the alleged cash transaction. The police could not testify that Christensen did not have contact with a third party, or that he did not just hide the money upon entering the hotel. In addition, the "wire" malfunctioned both times Christensen met Lewis to conduct the cash transactions. Therefore, the police neither saw the money pass to Lewis, nor could they hear and record the transaction.

Likewise, when Christensen went to Lewis' residence to receive the cocaine, the police lost sight of Christensen when he went around the back of the house to the entrance. There was evidence that four or five other people lived at the residence. The police could not see Christensen once he was in the house; they also could not see any drug transaction. In addition, because they could not maintain surveillance inside the house, and, because the "wire" failed both times Christensen was in the house, the police could not testify that Lewis was in the house. Lewis' counsel argued that Christensen might have intentionally caused the "wire" to malfunction during each meeting to cover up his own deception. Therefore the state's case essentially turned on the testimony of Robert Christensen. Christensen was a paid informant who at one time heavily abused cocaine. He, by his own testimony, received only a minimum of counseling to treat his addiction. His testimony is insufficient to provide an overwhelming case against Lewis.

We conclude that the error was not harmless beyond a reasonable doubt. We

therefore reverse Lewis' conviction.[1]

The conviction is REVERSED.

1. Our disposition of this issue makes it unnecessary for us to reach the other issue which Lewis     raises.