**Frederick D. MAY, Sr., Appellant,**

v.

**STATE of Alaska, Appellee.**

No. A–4363.

Court of Appeals of Alaska.

July 30, 1993.

Randall S. Cavanaugh, Anchorage, for appellant.

Eric A. Johnson, Asst. Atty. Gen., Office of Sp. Prosecutions and Appeals, Anchorage, and Charles E. Cole, Atty. Gen., Juneau, for appellee.

Before BRYNER, C.J., and COATS and MANNHEIMER, JJ.

## OPINION

COATS, Judge.

Frederick May, Sr. was indicted for one count of first-degree burglary and one count of third-degree theft. A jury found him guilty as charged. May now appeals his conviction and the trial court's denial of his motion for a new trial. We affirm.

Around 11:30 p.m. on April 26, 1990, Investigator Larsen of the Anchorage Police Department received a tip from Earl Morrison, an informant with whom Larsen had dealt in the past, that Frederick May, Sr. and Frederick May, Jr. were about to commit a burglary at a house on Bunnell Street. Morrison also provided a description of the Mays' car and told Larsen that May, Sr. planned to enter the house while his son stayed in the car. Larsen and Investigator Holloway picked up Morrison and drove to Bunnell Street where Morrison pointed out the house that the Mays intended to burglarize. The officers drove down an alley behind the house and saw the Mays' car pulling away from the back of the house. The Mays spotted the officers, attempted to drive away, crashed, and tried to escape on foot. Larsen apprehended May, Sr. and subdued him after a struggle. Another officer apprehended May, Jr.

The officers found three jewelry boxes on the rear seat of the Mays' car which were later identified as belonging to the owner of the house, Cleaven Smith. The police observed that the front door of the house had been kicked in, the back door had been damaged, and one of the bedrooms had been ransacked. Smith recognized the Mays and confirmed that they

had not been given permission to enter the house.

Police transported May, Sr. to the police station where Officer Hill and Investigator Mosher first advised him of his *Miranda* rights and then interviewed him. The interview was recorded on audiotape and videotape. After a brief discussion, May complained of back pain, and Mosher left the interview room to telephone May's doctor. Hill continued the questioning until May said, "I'd like to have an attorney present," at which point Hill ended the interview and turned off the audiotape. The videotape continued running. Shortly thereafter, May told Hill he wanted to speak to Mosher. Hill communicated May's request to Mosher who returned to the interview room. The following colloquy then occurred:

> Mosher: Okay. Fred, there seems to be some confusion here. Uh, Officer Hill just came out and told me that you were telling him that you didn't want to say anything [until] you had an attorney present. Is that right? That's ... why I brought this back in so that we have that on record. One way or the other, because if ... if that's what you want then fine. Uh, but he also told me that you wanted to talk to me. See I'm required by law because you're in custody to have this thing going.
>
> May: Okay, that's cool.
>
> Mosher: Okay. So ...
>
> May: ... I know that.
>
> Mosher: Okay. So I ... I just need your clarification.
>
> May: Uh, huh.
>
> Mosher: Do you want to have an attorney present first, or do you want to talk to me about something?
>
> May: I just want to talk.

May then confessed to the burglary.

■ May first argues that the police were barred from responding to his request to re-open discussion until his attorney was present. May alternatively contends that the police, before renewing their conversation with him, were obliged to re-advise him of his *Miranda* rights. However, May's case is controlled by *Quick v. State,* 599 P.2d 712 (Alaska 1979). In *Quick,* one of the defendants, William Jackson, initially invoked his right to counsel, at which point the police ceased interviewing him. Jackson then recommenced conversation with a police officer. Although the parties disputed what was initially said, the transcript was clear that the other officers reentered the room, and one said, "Now do you want to talk about this thing or not?" to which Jackson replied, "I'll tell you what I know." *Id.* at 721. The police did not re-advise the defendant of his *Miranda* rights. The supreme court affirmed the trial court's decision that the defendant's confession was valid under these circumstances:

> It is undisputed that the police immediately stopped questioning Jackson as soon as he requested an attorney. The renewed conversation was initiated by Jackson.... The transcript indicates ... that the police asked him again before questioning whether he wanted to proceed. He indicated he was willing to do so. The police actions were entirely reasonable under the circumstances, and we agree that Jackson's statement was admissible.

*Id.* at 722. The facts in May's case appear to be more favorable to the state than the facts in *Quick* because in May's case, before Officer Mosher resumed questioning May about the offense, he focused specifically on May's request for an attorney and established that May did not want an attorney present before talking to him.

May's reliance on *Hampel v. State,* 706 P.2d 1173 (Alaska App.1985) and *Minnick v. Mississippi,* 498 U.S. 146, 111 S.Ct. 486, 112 L.Ed.2d 489 (1990) is misplaced. In *Minnick,* the Supreme Court held that, generally once a defendant invokes his right to counsel, the police may not interview him without counsel present. However, the Court reiterated its prior holding that:

> an accused who requests an attorney, "having expressed his desire to deal with the police only through counsel, is not subject to further interrogation by the

authorities until counsel has been made available to him, *unless the accused himself initiates further communication, exchanges, or conversations with the police."*

*Id.* at 150, 111 S.Ct. at 489, quoting *Edwards v. Arizona,* 451 U.S. 477, 484–85, 101 S.Ct. 1880, 1884–85, 68 L.Ed.2d 378 (1981). (Emphasis added). May does not challenge the trial court's finding that he asked Hill to let Mosher know that May wanted to speak with him (Mosher). Thus, Mosher's inquiry concerning May's invocation of his right to counsel was proper because it was prompted by May's own re-initiation of communication. *Plant v. State,* 724 P.2d 536, 540 n. 5 (Alaska App. 1986).

In *Hampel,* the defendant asked the interrogating officer about obtaining legal representation. In response, the officer gave a long, rambling speech emphasizing the obstacles to obtaining counsel. 706 P.2d at 1175–77. In reversing the trial court's denial of the defendant's motion to suppress, we stated that it is improper "when an interrogating officer chooses to answer a question in a way which the officer knows or should know will be reasonably likely to discourage the accused from asserting the right to counsel." *Id.* at 1181. In May's case, the interrogating officer did not try to discourage May from exercising his right to counsel. Instead, as *Hampel* requires, the officer merely sought to clarify whether May, in fact, wished for counsel or whether he wished to speak to the police without legal representation. Thus, we affirm the trial court's decision denying May's motion to suppress.

■ May also seeks to have his conviction reversed because he had filed a pre-trial grievance with the bar association against his counsel, a public advocate. May filed the grievance on July 7, 1990, and the Office of Public Advocacy received notice of it on August 3, 1990, ten days before calendar call and seventeen days before May's trial on August 20. May's grievance was not brought to the attention of the court until he filed a *pro se* application for post-conviction relief on September 28, 1990, about one month after trial.

■ On this record, May has not shown that he was deprived of effective assistance of counsel. Clearly, the mere fact that May filed a bar grievance before trial does not establish ineffective assistance of counsel. To rule otherwise would allow defendants to freely discharge their counsel and obtain new counsel without showing good cause for such a charge. This court has recognized that "[t]he right to effective assistance of counsel does not encompass the right to reject appointed counsel and have new counsel appointed in the absence of any showing of cause for such change." *Monroe v. State,* 752 P.2d 1017, 1020 (Alaska App.1988). Thus, the trial court did not err in denying May's motion for a new trial.

May's conviction is AFFIRMED.