USCA1 Opinion

 

 United States Court of Appeals For the First Circuit No. 98-1560 UNITED STATES, Appellee, v. ANIBAL ORTIZ, Defendant-Appellant. _____________________No. 98-1685 UNITED STATES, Appellant, v. ANIBAL ORTIZ, Defendant-Appellee.  ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF MASSACHUSETTS [Hon. William J. Young, U.S. District Judge]    Before  Boudin, Circuit Judge, Bownes, Senior Circuit Judge, and Stahl, Circuit Judge.    Robert D. Dimler, by appointment of the Court, for defendant. Jennifer Zacks, Assistant United States Attorney, with whomDonald K. Stern, United States Attorney, was on brief, for theUnited States.June 2, 1999 STAHL, Circuit Judge. Defendant-appellant Anibal Ortizchallenges his money laundering convictions entered pursuant to ajury verdict, contending that the district court erred in denyinghis motion to suppress certain post-arrest statements. Because wefind that the statements were admitted in violation of Ortiz'sFifth Amendment rights, we vacate the convictions and remand forfurther proceedings. "[W]e recite the facts as found by the district court tothe extent they derive support from the record and are not clearlyerroneous." United States v. McCarthy, 77 F.3d 522, 525 (1st Cir.1996). On November 14, 1997, Ortiz was arrested at his place ofemployment on charges of money laundering. At the time of thearrest, the arresting officer, Special Agent Doo, read Ortiz hisMiranda rights in English. See Miranda v. Arizona, 384 U.S. 436(1966). When asked if he wanted an attorney, Ortiz stated that hedid. Agent Doo immediately ceased questioning Ortiz, seated him ona couch, handcuffed him, and left the room. Shortly thereafter,two other officers, Agents O'Neil and Navarro, approached Ortiz andre-read him his Miranda rights a second and third time, first inSpanish and then in English. According to the district court, Ortiz then initiatedconversation with the officers by inquiring about the chargesagainst him. Agent Navarro responded that Ortiz was being chargedwith money laundering and asked whether he wanted to cooperate. Ortiz stated that he did. A close reading of the record, however,reveals a different sequence of events. The uncontrovertedtestimony of Agent Navarro and Ortiz shows that immediately afterreading Ortiz his Miranda rights, Agent Navarro asked Ortiz whetherhe wanted to cooperate. Ortiz stated that he did, and only theninquired about the charges against him. Ortiz ultimately signedtwo forms waiving his Miranda rights and made a number of self-incriminating statements. To the extent that the district court'sfindings are inconsistent with this uncontroverted testimony, theyare clearly erroneous. Miranda and Edwards v. Arizona, together, provide thatwhen a suspect asserts his right to counsel, interrogation mustcease and the police may not reinterrogate the suspect untilcounsel is present, unless the suspect himself initiates furtherconversation. See 384 U.S. at 473-74; 451 U.S. 477, 484-85 (1981). Because the facts of this case parallel those of Edwards, we recitethe facts of that Supreme Court case in some detail.  The defendant in Edwards was arrested at his home andtaken to a police station where an officer informed him of hisMiranda rights. Like Ortiz, Edwards asserted his right to counsel,at which point police questioning ceased and he was taken to acounty jail. The next day, before counsel had been made availableto Edwards, two different officers approached Edwards in jail, toldhim that they wanted to talk to him, and again advised him of hisMiranda rights. Edwards stated that he was willing to cooperateand implicated himself in the crime. Prior to trial, Edwards movedto suppress his confession on the ground that his Miranda rightshad been violated when the officers returned to question him afterhe had invoked his right to counsel. The trial court denied themotion and the Arizona Supreme Court affirmed, concluding thatEdwards had waived his right to counsel when he voluntarily gavehis statements to the police. The Supreme Court, however,reversed, holding that "when an accused has invoked his right tohave counsel present during custodial interrogation, a valid waiverof that right cannot be established by showing only that heresponded to further police-initiated custodial interrogation evenif he has been advised of his rights." Edwards, 451 U.S. at 484. The government's attempt to distinguish Edwards hingesentirely on its argument that Ortiz, after receiving Mirandawarnings, asked about the charges against him and thereby"initiated" conversation. According to the government, theofficers' prior recitation of two additional sets of Mirandawarnings was not, strictly speaking, "interrogation." Cf. RhodeIsland v. Innis, 446 U.S. 291, 301 (1980) (defining "interrogation"as "express questioning . . . [or] any words or actions on the partof the police (other than those normally attendant to arrest andcustody) that the police should know are reasonably likely toelicit an incriminating response from the suspect"). Here, the uncontroverted evidence shows that after Ortizhad asserted his right to counsel to the first officer, the otherofficers not only delivered a second and third set of Mirandawarnings, but then immediately proceeded to ask Ortiz whether hewanted to cooperate. The officers thus reinitiated interrogationin violation of Edwards. See Minnick v. Mississippi, 498 U.S.146, 147 (1990) (stating that "once the accused requests counsel,officials may not reinitiate questioning 'until counsel has beenmade available' to him") (citing Edwards, 451 U.S. at 484-485)(emphasis added). It is quite true that in Oregon v. Bradshaw, 462 U.S.1039 (1983), a closely divided Supreme Court held that the policecould reinterrogate, assuming a waiver after new Miranda warnings,where a defendant "initiated" the conversation, see Edwards, 451U.S. at 484-85; and the plurality opinion in Bradshaw treated asinitiation a defendant's innocuous inquiry ("Well, what's going tohappen to me now?"), Bradshaw, 462 U.S. at 1045. But whileBradshaw obviously qualifies Edwards, eight of the Justices stillrequired that the defendant initiate a new conversation, and thatdid not occur in this case. If Edwards is to be further modified,cf. Bradshaw, 462 U.S. at 1047-51 (Powell, J., concurring), it isfor the Supreme Court to do it. Ortiz's self-incriminating statements, elicited inviolation of Miranda and Edwards, were introduced into evidence athis trial. There has been no suggestion that the introduction ofthis evidence was harmless, and our independent review of therecord convinces us that the error was not harmless. We thereforevacate Ortiz's convictions and remand for further proceedingsconsistent with this opinion.