**UNITED STATES of America, Plaintiff,**

v.

**Jared Lee LOUGHNER, Defendant.**

**Case No. 11cr0187 TUC LAB.**

United States District Court, D. Arizona.

May 5, 2011.

Beverly K. Anderson, Christina Marie Cabanillas, Dominic William Lanza, Mary Sue Feldmeier, Wallace Heath Kleindienst, U.S. Attorney's Office, Tucson, AZ, for Plaintiff.

Jon M. Sands, Federal Public Defenders Office, Phoenix, AZ, Judy C. Clarke, Clarke & Rice APC, Mark Francis Fleming, Law Office of Mark Fleming, Reuben Camper Cahn, Federal Defenders of San Diego Inc., San Diego, CA, for Defendant.

## ORDER RE: RELEASE OF BOP RECORDS

LARRY ALAN BURNS, District Judge.

Defendant Jared Lee Loughner filed a motion on March 2 asking the Court to bar the Bureau of Prisons from releasing to the Government records and observations relating to the defendant that he believes are non-discoverable, confidential, and privileged. (Doc. No. 122.[1]) He seeks "a

---

1. The defendant first filed this motion, under seal, on January 31, 2011, 1 and the Court found no good cause for sealing it. (Doc. No. 62.) The motion was filed for a second time, and again under seal, on February 17, 2011. (Doc. No. 106.) It is the March 2, 2011

protective order barring any BOP employee from disclosing non-public information about him to any outside agency, including the FBI and United States Attorneys Office, or any other person, with the exception of his counsel." (Mot. at 9.) The Court was prepared to rule on the motion at the hearing in Tucson on March 9, but allowed the defendant additional time to file a reply to the Government's opposition. The Court stressed, however, the importance of resolving the issue before the upcoming competency hearing on May 25. (Doc. No. 163 at 52:23–24.)

The stated bases for the defendant's motion are the Fifth, Sixth, Eighth, and Fourteenth Amendments to the Constitution, as well as Rule 16 of the Federal Rules of Criminal Procedure. The body of the motion isn't nearly so ambitious; the defendant offers little argument or case support for any constitutional claims, and instead focuses mostly on BOP's own confidentiality regulations and the psychotherapist-patient privilege.

The defendant first argues that BOP's Program Statement § 5840.04 prohibits the release of information regarding his behavior while in custody. That argument is a miss. Program Statement § 5840.04 "outline[s] procedures for staff recommendations and correspondence to agencies and persons about Bureau inmates." (Mot., Ex. C.) It sets forth procedures for BOP staff "when preparing inmate evaluations and/or letters of recommendation to outside agencies and persons." (*Id.*) It has nothing to do, in the Court's judgment, with the right of the Government to receive information about the defendant from BOP that it may use for law enforcement and prosecutorial purposes. In fact, a separate BOP Program Statement pertaining to "Release of Information," § 1351.05, explicitly contemplates that records about an inmate may be made available for these purposes:

> Staff may disclose information from a Bureau system of records only if one or more of the following criteria apply:
>
> (1) With the written consent of the individual to whom the record pertains . . .
>
> (2) To employees of the DOJ who have a need for the record in the performance of their duties . . .
>
> (4) For a routine use . . .
>
> Routine uses for Bureau systems of records may include the following:
>
> (a) To Federal, state, local and foreign law enforcement officials for law enforcement purposes such as investigations, possible criminal prosecutions, civil court actions, or administrative and regulatory proceedings.

(Opp'n Br., Ex. 1.) In any event, section 1351.05 specifically addresses the subject of the dispute here, and, as such, controls over the more general language of § 5840.04.

■ Even assuming Program Statement § 5840.04 has the meaning the defendant attributes to it, "the violation of a BOP Program Statement is not a violation of federal law. Program Statements are 'internal agency guidelines [that] may be altered by the Bureau at will' and that are not 'subject to the rigors of the Administrative Procedures Act, including public notice and comment.'" *Thompson v. Smith*, 2008 WL 1734495 at *4 n. 1 (E.D.Cal. Apr. 11, 2008) (quoting *Jacks v. Crabtree*, 114 F.3d 983, 985 n. 1 (9th Cir. 1997)). The defendant relies on *Wright v. Enomoto* for the opposite position, but that case involved a liberty interest protected by due process—that of a prisoner to be housed in the general prison population rather than a segregated, maximum security unit, unless a certain standard is

version of the motion that is live, and that has    been fully briefed. (Doc. No. 122.)

met—and is inapplicable here. 462 F.Supp. 397, 402–03 (N.D.Cal.1976). Program Statement § 5840.04 simply does not prevent BOP from sharing its records of the defendant with the Government.[2]

The defendant's next argument is that to the extent the BOP's records include reports from psychiatrists or psychologists who have visited with him in custody, those reports are protected from disclosure by the psychotherapist-patient privilege. The Psychology Services Manual observes that "there are no federal statutes specifically defining any privileged relationship between an inmate and his or her therapist"; it further observes that "federal courts have looked to common law and state statutes to define the degree of confidentiality inherent in the therapist/patient relationship." (Opp'n Br., Ex. 2.) The Government represents that two psychologists performed "intake assessments" of the defendant—Dr. Pujol in Tucson and Dr. Park in Phoenix. Both psychologists informed the defendant that their conversation was *not* confidential, although Dr. Pujol waited until their conversation was underway before doing so.

In arguing against disclosure, the defendant relies on the Supreme Court's holding in *Jaffee v. Redmond* that "confidential communications between a licensed psychotherapist and her patients in the course of diagnosis or treatment are protected from disclosure under Rule 501 of the Federal Rules of Evidence." 518 U.S. 1, 15, 116 S.Ct. 1923, 135 L.Ed.2d 337 (1996). This reliance on *Jaffee* is misplaced. First, unlike the conversations with BOP psychologists that took place here as part of an "intake assessment," the conversations at issue in *Jaffee* were presumptively confidential. Second, there was no doubt in *Jaffee* that the conversations took place in the course of diagnosis or treatment. The patient was a police officer who had sought counseling from a licensed clinical social worker after a traumatic incident in which she shot and killed a man; the family of the man had initiated a civil action against her and sought her counseling records.

Whether an interaction with a psychotherapist was "for the purpose of diagnosis or treatment" calls for a fact-intensive analysis, but the Ninth Circuit has held in at least one case that a defendant's confession to a prison counselor was not protected by the psychotherapist-patient privilege. *United States v. Romo*, 413 F.3d 1044 (9th Cir.2005). Relevant factors "may include the historical nature of the relationship between the individual and his confidante; the patient's purpose in making the communication; the nature of the contact; the timing and location of the communication; objective data, such as medical records, which corroborate the counseling contact; and whether mental health services were provided or requested during the communication." *Id.* at 1047. Courts forced to determine whether the privilege applies must "pay special attention to the particulars of the meeting during which the allegedly privileged information was exchanged." *Id.* Applying and analyzing the relevant factors here, the Court concludes that the intake assessments with the defendant conducted by the two BOP psychologists, along with their continued monitoring of the defendant, were not intended for diagnosis or

---

2. The defendant also relies on Program Statement § 5310.12, which references a Psychology Services Manual. Here, again, the defendant points to no language in the Program Statement that prohibits disclosure of records for law enforcement purposes, and the Court refuses to read any such prohibition into it. (Opp'n Br., Ex. 2.) Moreover, this assumes, again, that the Program Statement gives rise to positive rights that the defendant can assert, an assumption refuted by the case law.

treatment, and that the psychotherapist-patient privilege articulated in *Jaffee* does not apply.

The defendant makes two more arguments that can be addressed in short order. The first is that Rule 12.2 of the Federal Rules of Criminal Procedure exclusively governs the disclosure of mental health information in a criminal case. It does nothing of the sort. That rule requires only that the defendant notify the Government if he intends to assert an insanity defense or introduce expert evidence of a mental disease or defect at trial or during the sentencing phase of a capital case, *and* turn over to the Government any reports that form the basis of expert testimony that he will present during the sentencing phase of a capital case. It also allows for the Government to review the reports of a court-ordered mental examination once a capital defendant confirms an intent to offer evidence of his mental condition during sentencing proceedings. Fed.R.Crim.P. 12.2(c)(2)-(3). Rule 12.2 says nothing, however, about the Government's right of access to the BOP records now at issue, and the Court rejects the argument that because Rule 12.2 regulates disclosure of *some* mental state evidence, it regulates disclosure of *all* such evidence.

■ The second argument is that the defendant's statements in the BOP records were obtained in violation of his Fifth and Sixth Amendment rights: "The statements attributed to Mr. Loughner in the BOP material reviewed thus far, appear to have been made after the appointment of counsel, and without a re-admonishment of *Miranda* warnings." (Mot. at 8.) This argument is also a non-starter. *Miranda* applies to custodial interrogations—those situations in which questioning of a criminal defendant is designed or reasonably likely to elicit an incriminating response. *Rhode Island v. Innis*, 446 U.S. 291, 301, 100 S.Ct. 1682, 64 L.Ed.2d 297 (1980).

Questioning that is "normally attendant to . . . custody" is not covered by *Miranda* and does not implicate the defendant's Fifth and Sixth Amendment rights. *Kemp v. Ryan*, 638 F.3d 1245, 1255–56 (9th Cir.2011). The BOP records contain routine, day-to-day statements of the defendant of the type normally attendant to being in custody. There is no indication that the defendant has been "interrogated" in the *Miranda* sense, nor any hint that jailers have attempted to illegally communicate with him on matters of substance behind his lawyers' backs. *Edwards v. Arizona*, which the defendant cites, is simply not on point. 451 U.S. 477, 101 S.Ct. 1880, 68 L.Ed.2d 378 (1981).

■ A final point on the subject of privilege. The Court approves the Government's use of a filter team to screen BOP's records for possible privilege issues. The Court has reviewed the records submitted *in camera*, and finds that even those flagged by the filter team as "Potentially Privileged" are not, in fact, privileged. They consist of psychological records and reports that were generated pursuant to routine custodial protocols, as well as observations of the defendant's behavior and demeanor in custody that are not private, and as to which there is no reasonable expectation of privacy. *Hudson v. Palmer*, 468 U.S. 517, 526, 104 S.Ct. 3194, 82 L.Ed.2d 393 (1984) ("The recognition of privacy rights for prisoners in their individual cells simply cannot be reconciled with the concept of incarceration and the needs and objectives of penal institutions."). The Court finds that neither the psychotherapist-patient privilege nor the Fifth and Sixth Amendments bar the disclosure of this information to the Government. The Court makes this finding without prejudice, however. If or when the Government attempts to introduce information from the BOP records at trial, the

defendant may renew his objection. The defendant's motion to prevent release of BOP records to the Government is otherwise **DENIED.** The Government's filter team may provide the Government with all of the materials that were submitted for *in camera* review.

**IT IS SO ORDERED.**