Dewey Earl **JERNIGAN**, Appellant,

v.

The **STATE** of Oklahoma, Appellee.

Nos. F–82–34; F–82–35.

Court of Criminal Appeals of Oklahoma.

Dec. 22, 1983.

Rehearing Denied Jan. 24, 1984.

An Appeal from the District Court of Tulsa County; Joe Jennings, District Judge.

Johnie O'Neal, Asst. Public Defender, Tulsa, for appellant.

Michael C. Turpen, Atty. Gen., Thomas L. Spencer, Asst. Atty. Gen., Oklahoma City, for appellee.

## OPINION

BUSSEY, Presiding Judge:

The appellant, Dewey Earl Jernigan, hereinafter referred to as the defendant, was convicted of two counts of Robbery with Firearms, After Former Conviction of a Felony, in Tulsa County District Court, Cases No. CRF–79–3176 and CRF–79–3177 (F–82–35), was convicted of Kidnapping in Tulsa County District Court, Case No. CRF–79–3124 (F–82–34), was sentenced to ten (10) years' imprisonment for each count of Robbery with Firearms, After Former Conviction of a Felony to be served concurrently with each other and to run concurrently with defendant's forty (40) year sentence for Kidnapping, and he appeals.

Defendant's two appeals have been consolidated as they present the same issue which requires reversal.

The pertinent facts are that as Tulsa Police Detective Roger Harmon was arresting defendant in his Tulsa nightclub on October 17, 1979, defendant asked a barmaid to call his attorney. Also at the scene of the arrest was Officer John Dildine, who testified that defendant did ask "somebody" to call an attorney. At the police station, defendant was read his *Miranda* rights and testified that he understood them. However, he signed a waiver form, drawing a line through the part that read: "I do not want a lawyer." He testified that he *did* want an attorney but that he did not specifically ask Dildine to have an attorney present. Defendant was not questioned after the first waiver, but inquired whether his wife was the cause of his arrest. The officers would not tell him unless he signed a second waiver form that would not have any parts "lined-out." Defendant complied and was told that his wife had nothing to do with his arrest.

Then the detectives resumed their lengthy interrogation of him until he, at about midnight, stated to detectives Charlie Jones and J.L.R. Brown and Officer Morland that "I didn't want to talk anymore until I had seen my attorney...." (Motions Hearing p. 156). Defendant testified that Jones continued to question him for another half hour, threatening to arrest his wife. Jernigan stated that he was tired

and hungry and needed time to think things over and that Jones agreed to stop.

At approximately eight o'clock the next morning, defendant was again taken into the interrogation room and asked to sign another waiver form, but he testified that "... I didn't want to sign another one and didn't want to speak anymore until I had seen my attorney." (Motions Hearing p. 164). He stated that Jones then accused him of other crimes and that Jones said he would arrest his wife as soon as he (Jones) walked out of that interrogation room. Thereupon, defendant finally confessed.

Jones denied the substance of defendant's testimony. He further denied telling Gary Percifull, a reporter for the Tulsa World, that he was playing with Jernigan's mind, trying to get him to confess. Percifull testified to that effect.

Defendant telephoned his bar during a break from the interrogation on the 17th and explained to Bill Fordyce, who had answered the call, that he needed a lawyer. Fordyce replied that he would ask his lawyer, Tom Hanlon, to see him. Hanlon testified that Jones would not let him see the defendant. Jones stated the reason for that was because defendant told him that he did not want an attorney.

■ We are of the opinion that the practices of the Tulsa police violated the guidelines of *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), when the defendant signed the first waiver form because he had already invoked his right to counsel when he was arrested by Detective Harmon. "If the individual states that he wants an attorney, the interrogation must cease until an attorney is present. At that time, the individual must have an opportunity to confer with the attorney and to have him present during any subsequent questioning." *Miranda,* supra at 474, 86 S.Ct. at 1628. The first waiver should never have been sought, which only emphasized defendant's desire to have a lawyer.

Further violations were found when the police interrogation continued after the defendant stated that he did not want to talk anymore until he had seen his attorney. "The defendant may waive effectuation of these rights, provided the waiver is made voluntarily, knowingly and intelligently. If, however, he indicates in any manner and at any stage of the process that he wishes to consult with an attorney before speaking there can be no questioning." *Miranda,* supra at 444–445, 86 S.Ct. at 1612. See also, *Edwards v. Arizona,* 451 U.S. 477, 101 S.Ct. 1880, 68 L.Ed.2d 378 (1981).

■ Finally, we note the police practices violated the intent of *Escobedo v. Illinois,* 378 U.S. 478, 84 S.Ct. 1758, 12 L.Ed.2d 977 (1964), in that they actively denied him the proffered assistance of counsel. One Bill Fordyce had sent his attorney, Tom Hanlon, to the station for the defendant, however, Hanlon was denied permission to see the defendant for the reason stated by Jones that defendant said he did not want an attorney. In sum, defendant's motion to suppress his statements should have been sustained in both proceedings.

For the foregoing reasons, the judgments and convictions are REVERSED and REMANDED for further proceedings not inconsistent with the opinion.

CORNISH and BRETT, JJ., concur.