[No. B079143. Second Dist., Div. Six. Mar. 7, 1995.]

In re GILBERT E., a Person Coming Under the Juvenile Court Law.
THE PEOPLE, Plaintiff and Respondent, v.
GILBERT E., Defendant and Appellant.

## Counsel

Kent D. Baker, under appointment by the Court of Appeal, for Defendant and Appellant.

Daniel E. Lungren, Attorney General, George Williamson, Chief Assistant Attorney General, Carol Wendelin Pollack, Assistant Attorney General,

John R. Gorey and Carol A. Greenwald, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

YEGAN, J.—Gilbert E. appeals from the order of wardship (Welf. & Inst. Code, § 602) based upon the juvenile court's finding that he committed four counts of misdemeanor vandalism (Pen. Code, § 594, subd. (b)(4)), and four counts of affixing graffiti (Pen. Code, § 640.6). He contends that his inculpatory statements to the police were inadmissible because the officer deliberately continued to interrogate him after he invoked his *Miranda* rights. (*Miranda* v. *Arizona* (1966) 384 U.S. 436 [16 L.Ed.2d 694, 86 S.Ct. 1602, 10 A.L.R.3d 974].) We agree and reverse.

At 1:30 a.m. on August 17, 1993, Oxnard police officers detained appellant, who was nearly 15 years of age, with 4 other minors in an alley. After field interview cards had been filled out and the minors had been released, the police discovered that several nearby properties had just been painted with graffiti. One of the officers noted that the word "Turtle," which appellant had previously acknowledged to be his gang nickname, was included in the graffiti.

Appellant was arrested and transported to an interview room at the Oxnard Police Department. Detective James O'Brien activated a tape recorder in plain sight and attempted to interview appellant. Although the record does not show appellant's precise words, O'Brien testified that appellant "unequivocally" refused to waive his *Miranda* rights. Notwithstanding the invocation of his constitutional rights, O'Brien asked questions "outside of *Miranda*," i.e., "[i]f he was responsible for the graffiti in the alley." Appellant denied having committed the offenses.

A few minutes after appellant had refused to waive his *Miranda* rights, Detective O'Brien, who was still attempting to elicit incriminating statements, noticed that appellant was looking at the tape recorder. O'Brien asked appellant if he would feel more comfortable if the tape recorder was turned off. Appellant said, "yes." When asked, "[a]nd after you turned the tape recorder off, what happened next?" O'Brien responded: "He stated now that he wished to speak with me." O'Brien reminded appellant that he had previously refused to waive his rights. Appellant said "he didn't care" and wanted to talk. He thereafter admitted responsibility for the graffiti.

Detective O'Brien testified that he had not threatened appellant nor made any promises to him at any time. Nor had appellant made any admissions prior to his statement that he would talk to O'Brien.

The prosecutor asked the court to note that, although the conversation between O'Brien and appellant continued after the refusal to waive *Miranda* rights, "there was nothing of an incriminating nature" said during that time. The prosecutor argued that appellant's admission was voluntary.

In denying the motion to exclude appellant's statements, the juvenile court stated: "Well, what I think is critical here is what happened between the time that [appellant] initially invoked his Miranda rights and refused to answer the officer's questions and the subsequent agreement to speak. The officer indicates that he noticed that the minor was looking down at the recorder and I guess formed the opinion that it was the recorder that was intimidating the minor. [¶] And the questions that were asked, although they were about the subject matter that the minor was there accused of, I was interested in what the minor's answers were, because I wanted to see if we had, well, the cat's out of the bag situation, making an admission outside of Miranda and then after that agreeing to testify figuring that again it's out of the bag, why hide anymore, and that didn't happen. The minor continued to deny any involvement in the situation. [¶] I don't feel that the officer's actions in this case coerced the minor's later waiver, and the Court finds the statements to be voluntary and the motion is denied." Appellant's inculpatory statements were admitted into evidence in the People's case-in-chief.

 "We exercise independent review of the uncontradicted evidence [citation] and . . . conclude that under these circumstances, appellant's statements were coerced and involuntary . . . ." (*People* v. *Bey* (1993) 21 Cal.App.4th 1623, 1628 [27 Cal.Rptr.2d 28]; see also *People* v. *Crittenden* (1994) 9 Cal.4th 83, 128 [36 Cal.Rptr.2d 474, 885 P.2d 887].) Detective O'Brien's continued questioning of appellant after he had refused to waive his rights was a deliberate violation of *Miranda*. "Disrespect of the right [to remain silent] is indicative of coercion[.]" (*People* v. *Montano* (1991) 226 Cal.App.3d 914, 935 [277 Cal.Rptr. 327].) "Without the right to cut off questioning, the setting of in-custody interrogation operates on the individual to overcome free choice in producing a statement after the privilege has been once invoked." (*Miranda* v. *Arizona, supra,* 384 U.S. at p. 474 [16 L.Ed.2d at p. 723].)

"[T]he admissibility of statements obtained after the person in custody has decided to remain silent depends under Miranda on whether his 'right to cut off questioning' was 'scrupulously honored.' " (*Michigan* v. *Mosley* (1975) 423 U.S. 96, 104 [46 L.Ed.2d 313, 321, 96 S.Ct. 321].) Here the continued questioning was the antithesis of scrupulously honoring appellant's right to terminate the interrogation.

 "[A]n accused, . . . having expressed his desire to deal with the police only through counsel, is not subject to further interrogation by the

authorities until counsel has been made available to him, unless the accused himself initiates further communication, exchanges, or conversations with the police." (*Edwards* v. *Arizona* (1981) 451 U.S. 477, 484-485 [68 L.Ed.2d 378, 386, 101 S.Ct. 1880]; *People* v. *Crittenden, supra,* 9 Cal.4th 83, 128 [accord].) "An accused 'initiates' such dialogue when he speaks words or engages in conduct that can be 'fairly said to represent a desire' on his part 'to open up a more generalized discussion relating directly or indirectly to the investigation.'" (*People* v. *Mickey* (1991) 54 Cal.3d 612, 648 [286 Cal.Rptr. 801, 818 P.2d 84].) ▮ Simply looking at a tape recorder is not conduct which is tantamount to the initiation of further communication. It was Detective O'Brien who initiated further communication by offering to turn off the tape recorder. ▮ Where the police initiate further communication in the absence of counsel, ". . . the suspect's statements are presumed involuntary and are inadmissible as substantive evidence at trial, even if the suspect [thereafter] executes a waiver and the statements would be considered voluntary under traditional standards. [Citations.]" (*People* v. *Crittenden, supra,* 9 Cal.4th at p. 128.)

▮ We share the views of division four of this court: "This is a very troubling case, presenting a deliberate police violation of *Miranda* . . . ." (*People* v. *Bey, supra,* 21 Cal.App.4th at p. 1628.) The holding of *Miranda* is not arcane and establishes a "bright line" rule. (*Oregon* v. *Elstad* (1985) 470 U.S. 298, 317 [84 L.Ed.2d 222, 237, 105 S.Ct. 1285].) When the police deliberately step over the line and disobey Supreme Court pronouncements, respect for the rule of law necessarily diminishes. Appellant's confession should not have been admitted into evidence. Were we to reach a contrary determination, the police could deliberately and successfully ignore the pronouncements of the United States and California Supreme Courts.

We have reviewed the entire record. This is not a case in which an erroneous ruling regarding the introduction of a confession can be found to be harmless beyond a reasonable doubt. (*Arizona* v. *Fulminante* (1991) 499 U.S. 279, 310 [113 L.Ed.2d 302, 331, 111 S.Ct. 1246]; *People* v. *Cahill* (1993) 5 Cal.4th 478, 510 [20 Cal.Rptr.2d 582, 853 P.2d 1037].)

The order of wardship is reversed.

Stone (S. J.), P. J., and Gilbert, J., concurred.