80 F.3d 1509
 Donald Lee CRAIG, Petitioner-Appellant,
v.
Harry K. SINGLETARY, Secretary Department of Corrections,
State of Florida, Robert A. Butterworth, Attorney
General, Attorney General of the State
of Florida, Respondents-Appellees.
 No. 93-5123.
 United States Court of Appeals,
Eleventh Circuit.
 April 19, 1996.
 
 Donald Lee Craig, Avon Park, FL, pro se.
 Paul M. Rashkind, Asst. Federal Public Defender, Miami, FL, for appellant.
 Robert Butterworth, Atty. General, Dept. of Legal Affairs, Tallahassee, FL, Consuelo S. Maingot, Office of Attorney General, Miami, FL, for appellees.
 Appeal from the United States District Court for the Southern District of Florida.
 Before HATCHETT and BARKETT, Circuit Judges, and GODBOLD, Senior Circuit Judge.
 GODBOLD, Senior Circuit Judge:
 
 
 1
 Petitioner, Donald Lee Craig, convicted of murder in state court, filed for a writ of habeas corpus in the Southern District of Florida. The district court denied the writ, adopting the recommendations and reports of the Magistrate Judge. The court concluded that: (1) the admission of Craig's initial confession was harmless error; (2) the admission of his addendum confession was not error because Craig voluntarily reinstated contact with the detectives; and (3) the addendum confession was not the product of an illegal arrest. We reverse.
 
 I. Factual Background
 
 2
 Junior Richards was robbed and killed by a shotgun blast. Detective Nelson of the Metro-Dade Police Department received an anonymous tip that Craig and Henry Lee Newsome participated in the killing. Nelson, along with Detective Singer, located Craig at a Miami residence and asked him to go to the police station for questioning. He agreed to go. The detectives notified Craig that he was not under arrest, but advised him of his rights under Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). Detective Singer falsely told Craig that police officials had discovered his fingerprints inside Richards's car, and Craig explained he was a friend of Richards.
 
 
 3
 When Craig arrived at the police station, he was again advised of his Miranda rights, which he waived. Craig explained that he had known Richards for three or four months and was with him the previous night at a disco, and that they were together in Richards's car. Craig left Richards after Richards reported that he was going to visit his girlfriend. Craig stated that he later heard a shot and saw Henry Lee Newsome and Rodney Newsome running from Richards's car. He reported that Henry Lee appeared to be carrying a shotgun.
 
 
 4
 Detective Singer told Craig that he did not believe his story, so Craig offered to take a polygraph examination. Craig underwent two examinations, during which he would only give evasive answers. Craig was not placed under arrest but was escorted to the lieutenant's office at about 6:00 p.m.
 
 
 5
 At about 5:30 p.m. Henry Lee confessed and stated that Craig shot Richards. He explained that he and Craig approached Richards's car where he was sitting with his girlfriend. Craig ordered Richards out of the car, beat him, and attempted to drive away in his car. Richards began to protest and Craig shot him.
 
 
 6
 At trial Craig testified that he overheard Newsome confessing. Approximately two hours after Craig heard Newsome implicate him, Craig, still not under arrest, asked to speak with Detective Fandry whom Craig had previously worked with as a confidential informant. Fandry met with Craig, but did not question him about the incident or mention any possible evidence the police had against him. Craig told Fandry, "I really messed up. All I wanted to do was rip the guy." Craig also told Fandry that after Singer told him that the police had evidence against him, Craig had said "well if you got that against me, you might as well get me a lawyer."
 
 
 7
 Without seeking a lawyer for Craig, Fandry called Singer back into the room. Singer told Craig that he still was not in custody, but told him that his version of the facts did not make sense. Craig then admitted to participating in the robbery, but insisted that he did not shoot Richards and that Henry Lee had fired the gun. Craig was again advised of his Miranda rights. Without requesting a lawyer Craig gave a formal written statement which concluded at about 9:50 p.m. Craig was placed under arrest, and was kept alone in a room awaiting transportation to jail.
 
 
 8
 At 11:30 p.m. Craig asked to speak with Singer. Singer met with Craig, but did not question or interrogate him. Craig confessed that he had shot Richards. This confession was transcribed as an addendum to the initial confession.
 
 
 9
 At trial the jury found Craig guilty of first degree murder of Richards (Count I), armed robbery of Richards (Count II) and the aggravated assault of Laverne Bailey, Richards's girlfriend, by threatening her with a shotgun (Count III). He was sentenced to life with a mandatory twenty-five year minimum on count I; a consecutive term of life with a mandatory three-year minimum on count II; and a consecutive term of five years on count III.
 
 
 10
 In his direct appeal Craig argued that the trial court erroneously denied his motion to suppress statements made after a request for counsel and that his addendum confession was inadmissible as the fruit of an illegal arrest. The Florida Third District Court of Appeal noted that Craig's initial confession should not have been admitted because Craig had at least made an equivocal request for counsel by his statement to Detective Fandry. Craig v. State, 599 So.2d 170, 170-71 (Fla.Dist.Ct.App.1992). That court concluded that the addendum confession was properly admitted under Edwards v. Arizona, 451 U.S. 477, 101 S.Ct. 1880, 68 L.Ed.2d 378 (1981), because Craig voluntarily reinitiated contact with the detectives.
 
 
 11
 The Florida Supreme Court denied discretionary review over the Third District Court's ruling, Craig v. State, 605 So.2d 1263 (Fla.1992), foreclosing further review in the state supreme court.
 
 
 12
 Craig filed a petition for writ of habeas corpus in federal district court pursuant to 28 U.S.C. § 2254 raising three grounds for relief: (1) the trial court erred in admitting the initial and addendum confessions and these admissions were not harmless errors considering the paucity of the state's other evidence; (2) the petitioner's request for counsel rendered inadmissible all subsequent confessions, especially the addendum confession; and (3) the trial court erred in denying his motion to suppress his confessions because they were the product of an illegal arrest made without probable cause. The district court denied the writ. We reverse the decision of the district court and direct that the writ be granted. The denial of a writ of habeas corpus is subject to de novo review on appeal. Bonner v. Holt, 26 F.3d 1081 (11th Cir.1994), cert. denied, --- U.S. ----, 115 S.Ct. 1328, 131 L.Ed.2d 207 (1995).
 
 II. Admissibility of Initial Confession
 
 13
 In its initial brief the state conceded that Craig's initial confession was improperly admitted into evidence violating his Fifth Amendment right against self-incrimination. Now the state seeks to revoke that concession in light of the Supreme Court's opinion in Davis v. U.S., --- U.S. ----, ----, 114 S.Ct. 2350, 2352, 129 L.Ed.2d 362 (1994), where the Court considered how law enforcement officials should react when a suspect requests counsel in a manner insufficiently clear to invoke the prohibition on additional questioning. During questioning by the Naval Investigative Service, the defendant said "Maybe I should talk to a lawyer." Id. at ----, 114 S.Ct. at 2353. The investigators questioned him about his request, to which he responded "No, I'm not asking for a lawyer," "No, I don't want a lawyer." Id. Later, the defendant said "I think I want a lawyer before I say anything else." Id. The Court found that the questioning of the defendant did not violate his Fifth Amendment rights under Miranda. The Court held that a suspect must unambiguously request counsel. Id. at ----, 114 S.Ct. at 2355. A suspect "must articulate his desire to have counsel present sufficiently clearly that a reasonable police officer in the circumstances would understand the statement to be a request for an attorney." Id. An ambiguous or equivocal request for an attorney does not require the cessation of questioning. Id.
 
 
 14
 The state says that Craig's request for a lawyer was an equivocal one, and that not honoring the request did not violate any of his rights. The clarification of the law announced in Davis does not control this case. The factual differences between Davis and the case here are striking. Craig was not equivocal in his request like the defendant in Davis. Davis was indecisive about his request for counsel; he never undoubtedly requested a lawyer. Craig clearly stated that he wanted a lawyer, but he was not provided one, and the questioning did not cease.
 
 
 15
 In Davis the Court announced an objective test to determine whether a suspect requested counsel. Detective Fandry testified that he did not believe Craig was requesting an attorney because he manifested characteristics that he (Craig) typically performed when he was lying. This did not meet the objective standard of reasonableness. A reasonable officer would have concluded that Craig requested assistance of counsel.
 
 
 16
 The Supreme Court established in Edwards, 451 U.S. at 484-85, 101 S.Ct. at 1884-85, that once a defendant requests counsel, questioning must immediately cease and any further communications without counsel, unless reinitiated by the defendant, will be inadmissible. The detectives here questioned Craig after he requested assistance of counsel by stating to Detective Fandry, "well if you have that against me, you might as well get me a lawyer." This prohibited the detectives from questioning further. This violation of Craig's Miranda rights renders his initial confession inadmissible.
 
 
 17
 The initial confession provided law enforcement officials with probable cause to arrest Craig. Before the confession, the police lacked probable cause to arrest him. The only evidence available against Craig was Henry Lee's statement.
 
 
 18
 Q: BY MS. HENGHOLD [the prosecutor]: When you spent all day doing the photo lineup and working on the case, talking to Henry Newsome when Detective Fandry got there about 7:00 o'clock, is it true that the only thing--information you had implicating Donald Craig in the robbery, homicide, was the testimony of Henry Newsome who was implicated in the case?
 
 
 19
 A: [By Detective Singer] Yes.
 
 
 20
 Q: And you had no other evidence against Donald Craig at that time?
 
 
 21
 A: No, as a matter of fact, it wasn't even sworn testimony, it was just a verbal statement.
 
 
 22
 Tr. 134-35. The state prosecutor admitted that a suspect would not be arrested with only this scant evidence.
 
 
 23
 Ms. Henghold: When you have a loosely knit probable cause, it doesn't give you the right to make the arrest at that point. The arrest could not have been made just based upon a co-defendant's statement, obviously.
 
 
 24
 * * * * * *
 
 
 25
 Judge, what I will say--in any case where a codefendant has made a statement implicating somebody else, no arrest is made until you have some corroboration.
 
 
 26
 Tr. 410. The other evidence could not fulfill the probable cause requirement necessary for a legal arrest. Police officials' arrest without probable cause in violation of Craig's Fourth Amendment rights rendered the arrest illegal.
 
 III. Admissibility of Addendum Confession
 
 27
 The detectives accepted Craig's addendum confession after the illegal arrest. Craig challenges the admissibility of this confession on Fourth Amendment grounds. The Florida state courts did not afford Craig a full and complete hearing of his Fourth Amendment claim. The state court did not address the Fourth Amendment claim so Stone v. Powell, 428 U.S. 465, 96 S.Ct. 3037, 49 L.Ed.2d 1067 (1976), does not preclude review.
 
 
 28
 Craig contends that the addendum confession is a fruit of his illegal arrest that must be suppressed under Taylor v. Alabama, 457 U.S. 687, 102 S.Ct. 2664, 73 L.Ed.2d 314 (1982). The case here falls squarely within the rule announced in Taylor. Officials arrested Taylor on an uncorroborated tip from a prisoner. Id. at 688-89, 102 S.Ct. at 2666. He was read his Miranda rights and he executed a written confession. Id. at 689, 102 S.Ct. at 2666. The Court held that Taylor had been illegally arrested because the officials lacked probable cause. Id. The Court concluded that a confession resulting from custodial interrogation following an illegal arrest must be excluded from evidence unless "intervening events break the causal connection" between the confession and the illegal arrest so that the confession is "sufficiently an act of free will to purge the primary taint." Id. at 690, 102 S.Ct. at 2667 (quoting Brown v. Illinois, 422 U.S. 590, 602, 95 S.Ct. 2254, 2261, 45 L.Ed.2d 416 (1975)). In determining whether the taint has been purged, the Court should examine: (1) the temporal proximity of the arrest and the confession; (2) the presence of intervening circumstances; and (3) the purpose and flagrancy of the official misconduct. Id. at 690, 102 S.Ct. at 2666-67. The state bears the burden of proving that a confession is admissible. Id.
 
 
 29
 An examination of these factors shows that the addendum confession is inadmissible. First, there was no significant lapse in time. The addendum confession occurred approximately two hours after the illegal arrest. In Brown, 422 U.S. at 604-05, 95 S.Ct. at 2262-63, the officials obtained the incriminating statements within two hours, the same length of time involved here.
 
 
 30
 Second, no intervening circumstances were shown to be present to dissipate the effect of the unlawful arrest.
 
 
 31
 Third, the officers did not participate in flagrant misconduct, but they had no basis for the arrest. This is shown in the testimony of Ms. Henghold, the prosecutor, and Detective Singer.
 
 
 32
 The district court concluded that the admission of the addendum confession was proper by focusing on the voluntariness of it. Although voluntariness may be sufficient to fulfill the requirements of the Fifth Amendment, it is only a threshold finding for the Fourth Amendment claim. Taylor, 457 U.S. at 690, 102 S.Ct. at 2666-67. "In order for the causal chain, between the illegal arrest and the statements made subsequent thereto, to be broken, Wong Sun requires not merely that the statement meet the Fifth Amendment standard of voluntariness but that it be 'sufficiently an act of free will to purge the primary taint.' " Brown, 422 U.S. at 602, 95 S.Ct. at 2261 (quoting Wong Sun v. U.S., 371 U.S. 471, 486, 83 S.Ct. 407, 416-17, 9 L.Ed.2d 441).
 
 
 33
 Craig was arrested without probable cause. He confessed shortly after without any significant intervening event. The illegal arrest prohibited the addendum confession from being an act of free will.
 
 
 34
 The state has failed to meet its burden of demonstrating that the admission of the addendum confession was harmless beyond a reasonable doubt. The state had little other evidence against Craig, only the testimony of Henry Lee and Laverne Bailey. Bailey failed to identify Craig in a lineup two weeks after the alleged crime. The in-court identification occurred in a courtroom where Craig was the only African-American male on trial. Henry Lee was a participant in the crime and had a motive to protect himself. We cannot say that the admission of the confession was harmless error.
 
 
 35
 REVERSED with direction to grant the writ subject to right of the state to conduct a timely retrial.