## Commonwealth v. Betz

432

C.P. of Schuylkill County, no. 129-1996.

*Claude A.L. Shields, district attorney,* for the Commonwealth.
*Mark A. Barket,* for defendant.

BALDWIN, *J.,* June 13, 1996—The defendant has filed an omnibus motion in the nature of a motion to suppress statements made by him and any evidence seized as a result of those statements.

The credible evidence at hearing revealed that on November 30, 1995, the defendant was an inmate at SCI Frackville. At the conclusion of the dayroom activities at approximately 8 p.m. the doors to all cells were opened for the inmates to leave the pit area of the block and return to their cells. Everyone had moved out of the pit except an inmate named Ward who was standing in the pit, looking up to the second tier of cells and appeared to be talking to someone up there.

This activity was being observed by James Weissinger, a correctional officer at SCI Frackville, and Officer Weissinger saw the defendant approach Ward from the rear. The defendant then raised his arm up and came down on Ward's back two or three times. Within a matter of seconds several inmates came back into the pit and were grabbing for the defendant's right hand. A few seconds later the defendant came out of a pile of inmates in the pit and went directly toward Officer

Weissinger. The defendant was secured in his cell by Weissinger, and with the help of other officers, the other inmates were also moved into their cells. An inmate named Copeland approached Officer Weissinger and handed him a boot shank, which is a homemade knife fashioned from the steel shank of the state-issued boots given to all prisoners.

It took approximately three to four minutes to secure all the inmates in their cells. When that was completed, the defendant was cuffed, patted down and escorted to the nurse's station for medical assistance. As the defendant was being removed from his cell for that purpose, the shift commander, Captain Mizenko, to whom Officer Weissinger had given the shank, asked the defendant what had happened. The defendant responded that he had stabbed inmate Ward.

Approximately 30 to 45 minutes after the incident the defendant's cell was searched to see if any shanks had been removed from his boots. It was determined that the shanks were removed from two pairs.

When Captain Dennis Durant reported for duty the next day, he was informed about the incident and reviewed the various reports from officers from the night before. He interviewed inmate Ward, inmate Copeland and the defendant. Captain Durant testified that it was an unwritten administrative policy to interview all people involved when an incident occurred, but that if an inmate chose not to answer any questions, they would be returned to their cell. The defendant was not advised of the option not to respond to the questions.

The defendant was interviewed in a special room where he had been taken from restrictive custody. At the time of the interview he was handcuffed, and Captain Durant was accompanied by Lieutenant Dusel. The defendant was given no *Miranda* warnings prior to this

interview, nor had he been given any such warnings prior to speaking to Captain Mizenko the night before. An oral interview was conducted for approximately 30 minutes, after which the defendant was asked if he wanted to give a written statement. He agreed to do so, and his statement was dictated to a secretary, who transcribed it for his signature. In that statement he implicated himself in the stabbing of inmate Ward. During the interview he informed the officers that he had been making another shank, which he had thrown out the window of the cell. Based on this information, a correctional officer was sent outside to search the area adjacent to his cell window, and the second boot shank was found.

All the information and statements secured as a result of these interviews was turned over to the state police. On December 27, 1995, Trooper Kirk Kirkland went to the prison to interview the defendant. Trooper Kirkland read the *Miranda* rights to the defendant and requested him to sign a waiver of his right to remain silent. The defendant refused to sign the waiver and when asked whether he would give a statement regarding the incident, the defendant declined to do so without an attorney. Trooper Kirkland went on to show the defendant a copy of the written statement he had given to Captain Durant, and the defendant acknowledged that it was his statement and that he had signed the statement.

The defendant in his motion requests that his oral statement to Captain Mizenko and his oral and written statement to Captain Durant and Lieutenant Dusel be suppressed because he was not given his *Miranda* warnings prior to making the statements. He further asks that the second boot shank recovered from outside his cell window be suppressed, since it was recovered as

a result of information given in his statement to Captain Durant. Finally, the defendant asks that his statement, acknowledging his prior written statement, given to Trooper Kirkland be suppressed since he had invoked his right to an attorney before the questioning.

The Commonwealth has argued, without supporting case citation, that the *Miranda* warnings were not necessary since Captain Durant and Lieutenant Dusel were conducting an administrative investigation. We know of no such exception. In *U.S. v. Basquez,* 889 F. Supp. 171 (M.D. Pa. 1995), a strikingly similar case, an inmate involved in a fatal stabbing of another inmate in a dining facility was cuffed and taken from the dining room to an interrogation room, where he was later questioned. Although the court held that the fact of an inmate's incarceration does not necessarily indicate he is in "custody" for purposes of *Miranda,* the cuffing of the inmate after the incident and placing him in circumstances involving further restraints on his liberty than is customary for other inmates did constitute "custody" for *Miranda* purposes.

We believe the same reasoning applies in this case. Only those inmates suspected of being involved in the stabbing of inmate Ward were interrogated. The fact that there is an administrative policy to conduct such investigations does not take away the custodial nature of those interrogations. Nor are we impressed by the suggestion that there is no need for *Miranda* warnings since the correctional officers have no power to make an arrest, but must instead refer their investigation to the state police who then determine what arrests should be made. Correctional officers are duly sworn officers of the Commonwealth administering to the custody of persons incarcerated in Commonwealth facilities. It is difficult to see how they could not be considered to be agents of the Commonwealth.

Since the defendant was not given his *Miranda* warnings before being asked about the incident by Captain Mizenko and later interrogated by Captain Durant and Lieutenant Dusel, the statements made by the defendant to those officers must be suppressed. Additionally, since the defendant told the officers where to find the second boot shank during one of those statements, the use of that second shank as evidence in this case must also be suppressed.

Finally, Trooper Kirkland acknowledged that when he asked the defendant about making a statement, the defendant said that he did not want to make any statement without an attorney present. At that point the interrogation should have ceased. *Edwards v. Arizona,* 451 U.S. 477, 101 S.Ct. 1880, 68 L.Ed.2d 378 (1981). The statement that the defendant gave subsequent thereto acknowledging that the prior written statement was his statement must be suppressed. Since that written statement has already been suppressed this final point is probably moot.

The defendant has not asked for suppression of the result of the search of his cell, nor do we see any reason why such a request would be granted. The results of that search plus the first boot shank handed to Officer Weissinger by inmate Copeland are not subject to suppression as a result of the defendant's motion.

Accordingly, we enter the following:

## ORDER

And now, June 13, 1996, at 10:20 a.m., upon consideration of the defendant's omnibus pretrial motion in the form of a motion to suppress, it is hereby ordered that the three statements given by the defendant in response to interrogation by correction officers and the state police are suppressed, as is the boot shank found in the area outside and adjacent to the defendant's cell window.