Filed 12/19/14  P. v. Cook CA1/5

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| THE PEOPLE,<br><br>      Plaintiff and Respondent,<br><br>v.<br><br>JAVANCE MARSHAE COOK,<br><br>      Defendant and Appellant. | A135636<br><br>(Contra Costa County<br>Super. Ct. No. 51115054) |

Javance Marshae Cook appeals his conviction for attempted robbery and burglary. (Pen. Code, §§ 211, 212.5, subd. (c), 664.)[1]  He contends his conviction must be reversed because the trial court improperly admitted statements he made to a police detective while in custody.  Cook argues these statements were obtained in violation of his right to counsel and should therefore have been suppressed.  We conclude the trial court did not err and accordingly affirm the judgment.

FACTUAL AND PROCEDURAL BACKGROUND

Although the only issue on appeal is whether the challenged statements were properly admitted, the facts of the underlying offenses are nevertheless relevant to our analysis.  We therefore summarize them briefly.

*The 2009 Robbery of Mechanics Bank*

On October 6, 2009, a man later identified as Cook approached Emily Almeida, a teller at Mechanics Bank in Concord, and asked to cash a check.  Cook showed Almeida

---

[1] All statutory references are to the Penal Code.

1

his palm, on which the words " 'bank robbery' " were written. Almeida was afraid and handed over the money in her drawer. Cook asked for more money, and Almeida gave him several packets of money including a heavier bundle that included a tracking device. He returned the bundle with the tracking device, said he did not want it, and left.

Later, Almeida was asked to identify the robbery suspect from photographs of six people. Almeida selected a photo of Cook, although she was not 100 percent certain. Almeida recalled two teardrop tattoos on the suspect's face that were not in the picture in the photograph.

Linda Morris, the branch manager at Mechanics Bank, saw Cook enter the bank and pass her desk. When Morris saw Cook, she immediately thought the bank was going to be robbed. She knew most of their customers but had not seen appellant before, and after being robbed 15 times, she had a "gut reaction" based on his body language that something was unusual. Morris believed Cook was the person who robbed the bank.

Robert Monsod was working as a security guard at Mechanics Bank in Concord on October 6, 2009. His duties were limited to opening the door for customers and observing what went on at the bank. When he learned the bank had been robbed, he followed the suspect to a waiting car which was parked across the street at the Crowne Plaza Hotel on Concord Boulevard. Monsod identified Cook as the person who robbed the bank.

A forensics specialist with the Concord Police Department who collected and preserved evidence at crime scenes and conducted fingerprint comparisons was qualified as an expert in this case. On October 7, 2009, she processed the evidence collected from Mechanics Bank. She processed fingerprints from the straps on the bait money packet the suspect handed back to the teller, and Cook's fingerprints were positively identified as being on the money strap.

Detective David Ishikawa was assigned to investigate the October 6, 2009 robbery at Mechanics Bank. He read the reports and received information from the San Leandro Police Department that directed him to Cook. Ishikawa forwarded surveillance

2

photographs to the San Leandro Police Department and learned appellant had been arrested that day.

Later that day, Ishikawa interviewed Cook at the Union City Police Department. Cook was advised of his rights under *Miranda v. Arizona* (1966) 384 U.S. 436 (*Miranda*) by Detective Steve Cesaretti of the Union City Police Department. Cook waived his rights and agreed to talk to the detective. After Cesaretti was finished, Ishikawa went in to talk to Cook.

Cook told Ishikawa that he had gone to Concord with a male named "Ben" and his girlfriend. Cook had Ben pull over near the bank and then wrote on his hand with a green marker, "bank robbery, no dye." He showed the writing to the teller and obtained over $3,000 in cash. Cook said he drew a teardrop on his face that he later washed off. Appellant was wearing square diamond earrings, and they appeared to be what he was wearing in the photos at the time of the bank robbery.

*The 2010 Attempted Robbery of Mechanics Bank*

Melvin Bautista testified that on May 7, 2010, he was working as a teller at Mechanic's Bank in Concord. At around 11:00 a.m., he noticed one of the people standing in line was a man, subsequently identified as Cook, wearing a wig, carrying a purse, and talking on the phone using a woman's voice. Cook came up to Bautista's window and displayed a note stating that this was robbery. He asked for large bills only and no bait or tracking money. Bautista asked for the note, but Cook said, in a man's voice, that he could not turn it over. Bautista locked his money drawer and whispered to his supervisor that a robbery was occurring. The manager hit the silent alarm button and Bautista slowly started walking away from the window. Cook then left the bank.

Bautista was asked to identify individuals from a photographic lineup. He picked Cook out of the lineup and said that appellant had distinctive eyes and eyebrows.

Branch manager Linda Morris was also in the bank during the attempted robbery in May 2010 and said the suspect was a tall man dressed as a woman wearing a "really bad wig[.]" She was uncomfortable with the way he was dressed, and watched him from

3

her desk near the door. At trial Morris identified Cook as the individual who came into the bank.

Robert Monsod was also present during the attempted robbery in May 2010. He saw Cook enter the bank dressed as a woman. When Monsod learned of the attempted robbery from Bautista, he activated the alarm and followed Cook out the door. Cook went in the same direction as the perpetrator had gone after the previous bank robbery, crossed the same street, and got into a blue 1992 Honda Accord parked in the same Crowne Plaza Hotel parking lot. Monsod was able to give the police a partial license plate number for the car.

Detective Ishikawa suspected Cook was involved in the May 10, 2010 attempted bank robbery. He said it was "obvious" Cook was the person in the surveillance photographs. Ishikawa assembled a photographic lineup and showed it to the employees at the bank. Bautista identified Cook as the suspect. Morris thought it was Cook but was not certain. Monsod was not able to identify anyone in the photographs.

*The Police Questioning of Cook Regarding the Attempted Robbery*

Detective Ishikawa testified that he interviewed Cook at the Concord Police Department about two weeks after the attempted robbery. Ishikawa gave Cook a *Miranda* warning which he read from a preprinted card. He advised Cook of his right to remain silent, his right to talk to an attorney before answering any questions, and his right to have the attorney present during questioning; he further explained that if Cook could not afford an attorney, then one would be appointed to represent him free of charge. Cook separately confirmed that he understood each one of these rights.

Cook was then shown surveillance photographs obtained from the attempted robbery at Mechanics Bank in Concord. When Cook looked at the photographs, he said he wanted to talk to a lawyer. At that point, Ishikawa turned off the digital recorder with the intention of ending the interview. Cook then began asking Ishikawa "questions about the case." The questions were about the photographs and Cook said he wanted to see them. Ishikawa told Cook he could not talk to him about the case because Cook had asked to speak to an attorney.

4

Cook continued to ask questions and also make comments about the facts of the crimes. Ishikawa "asked [Cook] if he was changing his mind about wanting to talk to an attorney and he said yes." Ishikawa then "asked him if he was willing to talk to [the detective] without a lawyer, and he said yes." Ishikawa reached for the digital recorder to turn it back on, "and then [Cook] said he didn't want [Ishikawa] to turn the recorder on." Ishikawa then proceeded with the interview.

*The Information, Motion to Suppress, and Trial*

On September 23, 2011, the Contra Costa District Attorney filed a consolidated information charging Cook with second degree robbery and burglary (§§ 211, 212.5, subd. (c), 459, 460, subd. (b)) of Mechanics Bank in Concord on October 6, 2009 and attempted second degree robbery and burglary of the same bank on May 7, 2010. (§§ 211, 212.5, subd. (c), 664.) The information alleged Cook had one prior serious felony conviction.

Cook filed a motion under section 995 asking the court to suppress his statements made to law enforcement following the May 2010 attempted robbery. The People opposed the motion, arguing that after Cook requested counsel, he reinitiated conversation with the investigator and then expressly waived his right to counsel. Prior to trial, the court denied the suppression motion.

Jury trial began on February 21, 2012. During trial, Cook renewed the motion to suppress his statements to Detective Ishikawa regarding the May 2010 attempted robbery and burglary. The court held an evidentiary hearing outside of the presence of the jury, and after hearing Ishikawa's testimony and argument from counsel, it denied the motion. The court concluded Cook had reinitiated the conversation with Ishikawa and noted the detective had clarified with Cook that the latter wanted to speak without a lawyer. It found the reinitiation was unqualified and not limited to a particular topic. It also explained it had nothing before it that would contradict Ishikawa's testimony as to what had occurred during the interview.

On February 28, 2012, the jury convicted Cook of the charges. The court found the prior serious felony conviction to be true. On May 25, 2012, the court sentenced

5

Cook to seven years and eight months in state prison. Cook filed a notice of appeal on June 1, 2012.

DISCUSSION

Cook contends the trial court erred in refusing to suppress the statements made to Detective Ishikawa regarding the 2010 attempted robbery and burglary because the statements were obtained in violation of his *Miranda* rights. He argues he did not reinitiate contact with the detective after invoking his right to counsel, because Ishikawa never discontinued the interrogation. In addition, he asserts he was never expressly advised of his rights after invoking them and did not waive them thereafter. As we explain, Cook's arguments are not meritorious.

I. *Standard of Review and Governing Law*

We apply a de novo standard of review to the trial court's denial of a motion to suppress under *Miranda* "insofar as the trial court's underlying decision entails a measurement of undisputed facts against the law." (*People v. Riva* (2003) 112 Cal.App.4th 981, 988, fn. omitted (*Riva*).) "As for each of the subordinate determinations, [an appellate court] employs the test appropriate thereto. That is to say, it examines independently the resolution of a pure question of law; it scrutinizes for substantial evidence the resolution of a pure question of fact; it examines independently the resolution of a mixed question of law and fact that is predominantly legal; and it scrutinizes for substantial evidence the resolution of a mixed question of law and fact that is predominantly factual." (*People v. Waidla* (2000) 22 Cal.4th 690, 730 (*Waidla*).) The trial court's finding that Cook reinitiated communication with the detective is reviewed for substantial evidence "as the resolution of a 'mixed question' of law and fact that is 'predominantly factual.' " (*Id*. at p. 731.) The trial court's finding of any underlying historical fact is reviewed for substantial evidence as the resolution of a pure question of fact. (*Ibid*.)

As the California Supreme Court has explained, under *Edwards v. Arizona* (1981) 451 U.S. 477 (*Edwards*), "once a suspect has asserted the right to counsel during custodial interrogation, the suspect 'is not subject to further interrogation by the

6

authorities until counsel has been made available to him, *unless the accused himself initiates further communication, exchanges, or conversations* with the police.' [Citation.] If further conversations are initiated *by the police* when there has not been a break in custody, the defendant's statements are presumed involuntary and inadmissible as substantive evidence at trial." (*People v. Thomas* (2012) 54 Cal.4th 908, 926 (*Thomas*), italics added.) The *Edwards* rule is not a constitutional mandate and its application is justified only by reference to its prophylactic purpose. (*Ibid.*) Its presumption of involuntariness "is not to be uncritically extended." (*Ibid.*)

II. *Substantial Evidence Supports the Trial Court's Finding that Cook Reinitiated the Conversation With Detective Ishikawa.*

Cook contends his willingness to speak to Detective Ishikawa after invoking his right to counsel was not a reinitiation of the conversation but rather a product of Ishikawa's conduct of the interrogation. He contends the interrogation never ceased, and thus he could not have reinitiated the conversation. Cook points us to nothing in the record indicating this argument was raised below, and on that ground alone, he fails to meet his burden of showing error. (See *People v. Mays* (2007) 148 Cal.App.4th 13, 34 ["It is not sufficient to assert there was error; the appellant must support his claim by citations to the record."].)

Even if the argument is properly before us, it fails, because substantial evidence supports the trial court's finding that Cook reinitated the conversation with Ishikawa. The detective testified that after Cook asked to speak with an attorney, he turned off the digital recorder with the intention of ending the interview and began to gather his things to leave. In his section 995 motion, Cook himself argued "[t]he situation . . . pointed to a very likely possibility that Mr. Cook might have interpreted the switching off of the recorder as a sign that the interrogation was over." According to Ishikawa's uncontradicted testimony, it was Cook who continued to ask questions about the photographs and about the facts of the case after he had invoked his right to counsel and the detective was preparing to leave. At that point, Detective Ishikawa did not immediately reengage Cook in conversation. Instead, he asked Cook if he was changing

his mind about wanting to talk to an attorney and further asked Cook if he was willing to talk without counsel. Only after Cook said yes did the conversation resume. Cook's questions about the photographs and the facts of the case could reasonably be interpreted to represent a desire to reopen a general discussion of the case. (See *Waidla, supra,* 22 Cal.4th at p. 731 [questions such as " 'What can I do for you[?],' " " 'What do you want from me?,' " and " 'What can I do to help you[?],' " indicated desire to open up generalized discussion of investigation].) Thus, the trial court could find that this was a case in which " 'the accused himself initiate[d] further communication' " and not a case in which "further conversations were initiated by the police[.]" (*Thomas, supra,* 54 Cal.4th at p. 926.)

III.    *There Is No Requirement That Police Record the Questioning of a Suspect.*

Cook also argues the People failed to meet their burden of proving he reinitated conversation because Detective Ishikawa turned off the digital recorder, and the detective could not remember exactly what Cook said to reinitate the investigation.[2] Cook seems to imply that the only way the People could show he reinitiated the conversation would be to produce a recording of the interview. But as Cook himself concedes, the California Supreme Court has rejected the argument that a failure to record a custodial interrogation violates the federal Constitution. (*People v. Marshall* (1990) 50 Cal.3d 907, 925.) Cook cites no authority for the proposition that reinitiation may not be proved through witness testimony, and the authority of which we are aware is to the contrary. (*Riva, supra,* 112 Cal.App.4th at pp. 987, 994 [trial court could decide issue of reinitiation based on testimony of police officer, who was sole witness]; see *Waidla, supra,* 22 Cal.4th at p. 731 [trial court could accept detective's testimony as substantial evidence that defendant had initiated conversation with police].) And as we explained earlier, there

---

[2] Cook argues Ishikawa's decision to turn off the recorder after he invoked his right to counsel violated his constitutional right to have evidence preserved for his defense. Insofar as we can discern, Cook did not raise this issue in the court below, and he has therefore failed to preserve it for appellate review. (*People v. Memro* (1995) 11 Cal.4th 786, 833.)

8

was substantial evidence to support a finding that it was Cook, not Ishikawa, who initiated the further conversation about the investigation.

Moreover, here as in *Thomas,* "[t]he circumstances . . . show that defendant's statements to [Ishikawa] were not coerced by police badgering. It was defendant who initially invoked his constitutional right, but then told the . . . detective that he wanted to talk to the detective without counsel present. Without more, there is no reason to conclude that the statements defendant later gave to [Ishikawa] about the [May 2010 attempted robbery and burglary]—after again being [reminded] . . . of his *Miranda* rights and again agreeing to waive those rights—resulted from improper badgering and coercion by those officers. There is no reason why, if defendant did not want to talk with [Ishikawa] without an attorney present, he could not have simply said so, and there is no reason to doubt that defendant knew this, given that the first time he had asserted his right to counsel the questioning had immediately ceased and no attempts to question him were made until he volunteered to talk." (*Thomas, supra,* 54 Cal.4th at p. 927; see also *Riva, supra,* 112 Cal.App.4th at p. 994 [defendant's statements were voluntary even where detective asked defendant whether he wanted to talk again and failed to re*Mirandize* defendant, where no evidence suggested intimidation and defendant was familiar with criminal justice system].)

We therefore conclude the trial court did not err in admitting Cook's statements regarding the May 2010 attempted robbery and burglary. Because we find no error, we need not engage in any harmless error analysis.

DISPOSITION

The judgment is affirmed.

_____

Jones, P.J.

We concur:


_____

Simons, J.


_____

Needham, J.