[DO NOT PUBLISH]

In the

# United States Court of Appeals

## For the Eleventh Circuit

_____

No. 22-13717

Non-Argument Calendar

_____

JOHN THOMAS SCHOOLCRAFT,

Petitioner-Appellant,

*versus*

WARDEN, G.S.P.,

Respondent-Appellee.

_____

Appeal from the United States District Court
for the Southern District of Georgia
D.C. Docket No. 2:19-cv-00087-LGW-BWC

_____

Before WILSON, NEWSOM, and LUCK, Circuit Judges.

PER CURIAM:

John Schoolcraft, proceeding *pro se*, appeals the district court's denial of his 28 U.S.C. § 2254 petition for a writ of habeas corpus. He asserts that the district court erred by concluding that the Georgia Court of Appeals didn't unreasonably apply federal law in determining that he knowingly and voluntarily waived his rights under *Miranda v. Arizona*, 384 U.S. 436 (1966), before he made a self-incriminating statement to the police. He also contends that the Georgia Court of Appeals unreasonably applied federal law because, he argues, it failed to consider whether the state trial court incorrectly determined that he was not in custody for *Miranda* purposes before the police read him his *Miranda* rights.

## I

If a state court has adjudicated a claim on the merits, a federal court may grant habeas relief only if the state court's decision (1) was contrary to, or an unreasonable application of, clearly established federal law, as determined by the Supreme Court, or (2) was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. 28 U.S.C. § 2254(d). The Antiterrorism and Effective Death Penalty Act of 1996 imposes a highly deferential standard for evaluating state-court rulings and demands that state-court decisions be given the benefit of the doubt. *Sears v. Warden GDCP*, 73 F.4th 1269, 1279 (11th Cir. 2023). This deference also applies to factual

determinations made by a state court; a factual determination made by a state court is presumed correct, and the petitioner has the burden of rebutting the presumption by clear and convincing evidence. 28 U.S.C. § 2254(e).

Clearly established federal law refers to the holdings of the Supreme Court's decisions as of the time of the relevant state-court decision. *Harrington v. Richter*, 562 U.S. 86, 100 (2011). A state court unreasonably applies clearly established federal law if it identifies the correct legal rule from Supreme Court case law but unreasonably applies that rule to the facts of the petitioner's case. *Putman v. Head*, 268 F.3d 1223, 1241 (11th Cir. 2001). To be clear, though, an unreasonable application of federal law is different from an incorrect application of federal law. *Harrington*, 562 U.S. at 101. A state prisoner seeking federal habeas relief must show that the state court's ruling was "so lacking in justification" that its error was well understood and comprehended in existing law beyond any possibility for reasonable disagreement. *Id.* at 103. In other words, a state court's determination that a claim lacks merit precludes federal habeas relief so long as reasonable jurists could disagree about the correctness of the state court's decision. *Id.* at 101.

If the petitioner establishes that the state court unreasonably applied clearly established federal law, we still consider whether the state court's error was harmless. *Sears*, 73 F.4th at 1280, 1292. An error is harmless unless "actual prejudice" results from it, meaning the error must have had a "substantial and injurious effect or influence" in determining the jury's verdict. *Id.* at 1292. To assess

the extent of any prejudicial effect, we examine the state court's ruling in the context of the petitioner's trial. *Id.* An error is not harmless if, after reviewing the record, we are left with a "grave doubt about the effect of the error." *Id.*

## II

In *Miranda v. Arizona*, the Supreme Court held that the prosecution may not use statements, whether exculpatory on inculpatory, stemming from a defendant's custodial interrogation unless it "demonstrates the use of procedural safeguards effective to secure the privilege against self-incrimination." 384 U.S. 436, 444 (1966). The Court defined custodial interrogation as "questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way." *Id.* *Miranda* requires that, prior to any questioning, the suspect "must be warned that he has the right to remain silent, that any statement he makes may be used as evidence against him, and that he has the right to an attorney. *Id.* The suspect may waive these rights, but only if the waiver is made "voluntarily, knowingly, and intelligently." *Id.* Of course, *Miranda* protects a right to have counsel present during any custodial interrogation; accordingly, absent such interrogation, no right arises, no infringement can occur, and there is no need to determine whether a valid waiver occurred. *Edwards v. Arizona*, 451 U.S. 477, 485–86 (1981).

To invoke his rights under *Miranda*, a suspect must unequivocally state that he wants to remain silent or that he does not want to talk to the officers or request that an attorney be present.

22-13717                Opinion of the Court                5

*Berghuis v. Thompkins*, 560 U.S. 370, 381–82 (2010).  If the suspect makes a statement concerning the right to counsel that is ambiguous or equivocal or makes no statement, the police need not end the interrogation or ask questions to clarify whether the accused wants to invoke his *Miranda* rights.  *Id.* at 381.

Whether a suspect was in custody and entitled to *Miranda* warnings is a mixed question of fact and law.  *Thompson v. Keohane,* 516 U.S. 99, 102, 112–13 (1995).  In determining whether an individual was in custody, a court must first examine the totality of the circumstances surrounding the interrogation—a factual inquiry.  *Id.* at 112–13.  The court then must consider whether, under those circumstances, there was a formal arrest or restraint on freedom of movement of the degree associated with a formal arrest—the ultimate and legal inquiry.  *Id.*  The initial determination concerning custody depends on the objective circumstances of the interrogation, not on anyone's subjective views; accordingly, the only relevant inquiry is whether a reasonable person in the suspect's position would have felt that he was free to end the interrogation and leave.  *Id.*  The ultimate inquiry requires application of the controlling legal standard to the historical facts.  *Id.*  Relevant factors in determining whether a person is in custody for *Miranda* purposes include the location of the questioning, the duration of the questioning, statements made during the interview, the presence or absence of physical restraints during the interview, and whether the interviewee is released at the end of the interview.  *Howes v. Fields,* 565 U.S. 499, 509 (2012).

In *Yarborough v. Alvarado*, the Supreme Court considered whether the defendant, Alvarado, who was a minor at the time, had been in custody for *Miranda* purposes. 541 U.S. 652, 652–55 (2004). The Court listed certain factors indicating that a reasonable person in Alvarado's position would have felt free to end his interview at the police station and leave: (1) the police did not transport Alvarado to the police station or require him to appear at a certain time; (2) they did not threaten him or place him under arrest; (3) his parents remained in the lobby during the interview, suggesting it would be brief; (4) during the interview, the detective focused on Alvarado's codefendant's crimes, rather than Alvarado's; (5) the detective appealed to Alvarado's interest in telling the truth and being helpful, rather than threatening him; (6) the detective twice asked Alvarado if he wanted to take a break; and (7) Alvarado went home after the interview. *Id.* at 664–65. The Court also listed countervailing factors suggesting that a reasonable person would not have felt free to leave: (1) the interview lasted two hours; (2) the detective did not tell Alvarado that he was free to leave; (3) Alvarado was brought to the police station by his legal guardian rather than by arriving on his own accord; and (4) Alvarado's parents were not allowed to be present during the interview. *Id.* at 665.

In *Yarborough*, which arose out of a habeas petition filed under § 2254, the Supreme Court held that though reasonable jurists could disagree over whether Alvarado was in custody, the state court's application of clearly established federal law was reasonable. *Id.* at 664. The Court explained that the differing indications led it to hold that the state court's application of the custody

standard was reasonable. *Id.* at 665. The Court further held that the more general the rule, the more leeway courts have in reaching outcomes in case-by-case determinations, and considering that the custody test is general, the state court applied federal law that fit within the matrix of the Court's prior decisions. *Id.* at 664–65. The Court held that it could not grant relief under § 2254 by conducting its own independent inquiry into whether the state court was correct as a *de novo* matter. *Id.* at 665.

Before the state may introduce a defendant's uncounseled, self-incriminating statements made during a custodial interrogation, the state must show that the defendant knowingly and voluntarily waived his *Miranda* rights, but the state need not show that the waiver was expressly given. *Berghuis*, 560 U.S. at 382, 384. The state needs to show that the waiver (1) "was the product of a free and deliberate choice rather than intimidation, coercion, or deception," and (2) was "made with a full awareness of both the nature of the right being abandoned and the consequences of the decision to abandon it." *Id.* at 382–83. Only if the circumstances surrounding the interrogation reveal both an uncoerced choice and the requisite level of comprehension may a court properly conclude that the *Miranda* rights have been waived. *See id.* at 383–85. Factors when considering the totality of the circumstances include the defendant's lack of education or low intelligence, failure to appraise the defendant of his rights, the length of detention, the repeated and prolonged nature of the questioning, and the use of physical punishment, including deprivation of food or sleep. *Schneckloth v.*

*Bustamonte,* 412 U.S. 218, 226 (1973).  No single factor is controlling. *Id.*

### III

Here, the district court correctly concluded that the Georgia Court of Appeals did not unreasonably apply federal law in determining that Schoolcraft knowingly and voluntarily waived his *Miranda* rights before making a self-incriminating statement to the police.  *See* § 2254(d); *Sears*, 73 F.4th at 1279; *Miranda*, 384 U.S. at 444.

As an initial matter, several objective factors support the conclusion that Schoolcraft was not in custody for *Miranda* purposes—(1) that Schoolcraft voluntarily went to the police station in his own car with his wife, who waited in the lobby during his interview, (2) that the police did not tell him that he was under arrest and made no allegations pre-*Miranda* regarding the sexual relationship between him and the victim, (3) that there was no evidence that he was threatened, handcuffed, or physically restrained during the interview, (4) that he was offered and given drinks, cigarettes, and restroom breaks, and (5) that he was told that he could leave. *See Thompson,* 516 U.S. at 102, 112–13; *Howes*, 565 U.S. at 509; *Yarborough*, 541 U.S. at 664–65.

True, some factors might have supported a conclusion that Schoolcraft *was* in custody—(1) that he was interviewed in a secured room at the police station, and he got to that room by walking through an automatically locked door and past several officers' cubicles, (2) that the pre-*Miranda* portion of the interview lasted about four hours, and the interview continued for about three

more hours post-*Miranda*, (3) that he was escorted to and from the restroom and to and from his smoke break, and (4) that he was arrested at the end of his interview. *See Thompson,* 516 U.S. at 102, 112–13; *Howes*, 565 U.S. at 509; *Yarborough*, 541 U.S. at 664–65.

Because the competing considerations could lead reasonable jurists to disagree over whether Schoolcraft was in custody, we cannot say that the Georgia Court of Appeals unreasonably applied federal law in concluding that he was not.

Moreover, even if a reasonable jurist could have concluded that Schoolcraft was in custody for several hours, and even though his custody would be a relevant factor in determining whether he knowingly and voluntarily waived his *Miranda* rights after receiving them, it did not, by itself, determine whether his waiver was coerced. *See Berghuis*, 560 U.S. at 382–84; *Schneckloth,* 412 U.S. at 226. The evidence shows that, though Schoolcraft was hungry and unfed on the day of the interrogation, he was generally given access to relieve himself, given drinks and cigarettes, and was never physically punished. *See Schneckloth,* 412 U.S. at 226. There was also no evidence that he lacked education or that he had low intelligence. *See id*. After his *Miranda* rights were read to him, Schoolcraft confirmed that he understood them, he continued to talk to the officers without asking for an attorney or asking to stop the interview, and he subsequently gave a confession. *See id*. Thus, the Georgia Court of Appeals reasonably applied federal law when it concluded that, under the totality of the circumstances, Schoolcraft voluntarily and knowingly waived his *Miranda* rights before he confessed that he

engaged in sexual conduct with the victim.  *See Miranda*, 384 U.S. at 444; *Berghuis*, 560 U.S. at 382–84; *Schneckloth,* 412 U.S. at 226; *Harrington*, 562 U.S. at 101–03.

Finally, to the extent that Schoolcraft argues that he was entitled to *Miranda* warnings before he made statements about kissing the victim and being in love with her because he considered them self-incriminating, the admission of these statements at trial was harmless because his post-*Miranda* confession that he engaged in sexual conduct with the victim—the acts that for which he was charged—was properly admitted at trial.  *See Sears*, 73 F.4th at 1280, 1292.

For the foregoing reasons, the district court did not err by denying Schoolcraft's § 2254 petition.

**AFFIRMED.**